N. F. PIFER, Administrator, Appellee, v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Appellant.

No. 41816.

APRIL 4, 1933.

E. N. Farber and Hughes, O'Brien & Faville, for appellant.

F. E. Northup and A. B. Hoover, for appellee.

MITCHELL, J.—The accident in which the appellee's decedent met her death occurred approximately 3½ miles west of the town of Ferguson, at a point where the double tracks of appellant's main line of railroad cross primary highway No. 14.

Primary highway No. 14 is a north and south highway. The railroad tracks run approximately east and west. The automobile was moving south, approaching the tracks. The record shows that fresh gravel had been put on highway No. 14, where it crosses appellant's tracks, only a few weeks before the day of the accident. Within 50 to 60 feet north of the crossing the gravel became heavier, there being about 3 inches of gravel most of the way for 40 to 50 feet, but the surface of the highway for a distance of 10 to 12 feet north of the tracks was hard and there was no loose gravel there. The road grader or maintainer had very recently been over the highway, appellee's car being the first to travel along that road since the grader had been over it. The highway is on a 6 per cent grade north of the railroad tracks for a distance of about 900 feet. From that point to a place 55 or 60 feet north of the tracks, the westward view of one traveling south on the highway is totally obstructed by an embankment which is 15 to 20 feet high, and was covered with a growth of small trees and bushes at the time of the accident. From the point where the west view of the southbound traveler again becomes unobstructed to the north rail of the south track is a distance of 68 to 74 feet. For that distance the view is clear.

At about 1:30 in the afternoon of October 3, 1930, appellee, accompanied by his wife, was driving south on highway No. 14, in a Model T Ford sedan, approaching the place described, where the highway is traversed by appellant's double tracks. It was a clear day; there were no other cars visible on the highway; there was nothing to divert appellee's attention from the driving of his automobile. The record shows that he had traveled the same road no more than ten days previously and that he was familiar with the general physical condition of the crossing. He testified that his car was in good mechanical condition and that he had that day inspected and adjusted the brakes and that they were in perfect working order. When he was about 60 feet north of the north track he saw a passenger train approaching on the south track. The engine was about 350 feet away. He testified that at the time he first saw the locomotive the bell was not ringing, and no signal had been given of the approaching train. He said that at that point, 55 to 60 feet north of the north track, he applied the foot brake with all the pressure he could, and gripped the wheel, expecting to stop, but saw that he could not stop his car and so attempted to

turn to the left of the train. The wheels failed to respond at first, and when at last they did respond and his car started to turn to the left, he was within 5 or 10 feet from the north track. The train was on the south track. He turned his car east on the north track, thinking it would be in the clear, but in going over the crossing the car jumped over between the two tracks, so that both right wheels were between the two main railroad tracks when he left the planks of the crossing, and came to a stop parallel to the train. As he came to a stop the front of the locomotive rushed past him and his car was caught by some part of the train and thrown completely over and dragged some distance, so that after the collision it lay about 30 feet east of the place where it had come to a stop between the tracks. Appellee's wife was under the car and was dead when the car was lifted from her.

The appellee admitted in his testimony that he expected to bring his car to a stop at the edge of the crossing, or at least until he could see clear up the track to the west. He applied the full braking power, and the brakes set both wheels tight, but for the first 45 or 50 feet after he had applied the brakes they did not seem to retard to any great extent the momentum of the car until he got within a few feet of the tracks. The appellee admitted that the reason the car did not respond to the brakes when they were fully applied was on account of the loose gravel.

At the close of all the evidence the appellant moved for a directed verdict. The motion was overruled, and the cause was submitted to the jury on the three questions of: (1) failure to sound statutory train signals as the train approached the crossing; (2) proximate case; and (3) contributory negligence. Although the deceased was the wife of a Congregational minister, only 46 years of age, the mother of several children, a lady in good health, doing her own housework and assisting her good husband in his chosen work, the jury allowed only the sum of $1,000.

There is no question under the record but that the evidence covering failure to give statutory train signals is sufficient to go to the jury on that question. Conceding this, the appellant contends that it was not guilty of any negligence which contributed as a proximate cause of the accident. The record shows that Pifer was driving a Model T Ford sedan and his wife was occupying the front seat with him. The automobile was being driven south toward the crossing of the railway. A passenger train of appellant approached

the crossing from the west. The highway intersected the railway at approximately right angles, and was crossed at this point by two main tracks. The passenger train was on the south, or second, main track crossing. The highway was graveled and a maintainer or grader had recently been over it so that there were no vehicle tracks visible on the surface. There was a coating of loose gravel on the surface. It was a bright, clear, still day. There were no diverting circumstances of any kind or character. The highway is on a declining 6 per cent grade as it approaches the railroad tracks. The driver was an experienced driver and his brakes were in excellent condition. The driver had driven over this crossing a week or ten days before. As the automobile approached the railroad track, it was traveling at a rate of approximately 15 miles per hour. The train was moving at a speed of 45 to 50 miles per hour. It was the intention of the driver to stop his car before he reached the railroad tracks. This was his intention before hearing or discovering the approaching train. The driver testified as follows:

"Q. As you approached the crossing there and about 55 feet north of the track, what were you undertaking to do or intending to do with the movement of your car? A. Expected to bring it to a stop at the edge of the crossing or at least until I could see clear up the track to the west. I had already looked east for a mile up the track and no train was in sight and intended to bring the car to a stop to look west."

The driver, when about a distance of 60 feet north of the tracks or approximately 74 feet from the place where his car was struck by the train, applied his brakes. The car skidded and slid forward over the loose gravel quite as readily with locked wheels as it would have if the brakes had not been set. The driver of the car testified as follows:

"After the wheels locked in setting the brakes at full braking power the speed lessened. Didn't lessen a great deal for the first 45 to 50 feet until I got within just a few feet of the tracks. Before it seemed to retard to any great amount the momentum of the car slowed up some but not as much as I expected to for a distance of some 50 feet.

"Q. Why didn't it respond? A. My judgment was on account of the loose gravel accumulated.

"Q. Is that the same reason that the brakes didn't take hold in your judgment? A. In my judgment."

The driver of the car also testified as follows:

"Under normal conditions on that hill I could stop the Ford car running 15 miles per hour in 25 to 30 feet."

He had more than twice this distance within which to stop and avoid the accident. After applying all the braking power, the brakes locked the wheels, and because of the loose gravel the car skidded and slid up to the point where it came in contact with the side of the engine. If the conditions had been as he supposed them to be, he could and would have stopped his car in safety. The cause of the accident, over which neither party to this action had any control, which prevented the auto with its passenger being stopped before reaching the crossing, regardless of the statutory crossing signals, was the loose gravel. But for the loose gravel no accident would have occurred, and therefore it must be determined that the condition of the highway was the proximate cause of the accident.

The case of Barrett v. United States Railroad Adm. et al., 196 Iowa 1143, 194 N. W. 222, 224, is closely parallel to the case at bar. This court said in that case:

"Assuming that the trainmen failed to give the station signals, in what way did such failure contribute proximately to the collision? Manifestly, the giving of such signals would not have ameliorated the unexpected conditions which rendered her helpless to prevent collision. In other words, would the giving of the signals have aided her in stopping her car upon the icy surface? The most that can be said is that, if she had heard the signals, she would have come to an earlier stop when she was farther away. Can we assume, or could the jury assume, that, if the signals had been given, she would have stopped her car farther away than 40 feet? Why should she do so? If conditions had been in fact as she supposed them to be, she *could,* readily, and *would* have, stopped her car after crossing the side track. Would it have been less prudent for her to stop her car 40 feet away from the track than to stop it 60 or 80 feet away therefrom? If she were riding in a horse-drawn vehicle and were driving a timid or fractious horse, prudence would suggest that she should stop far enough away to avoid the risk of frightening her horse; but no such reason of prudence obtains in

the use of inanimate horse power. An automobile stopped 30 or 40 feet away is as safe under ordinary conditions as if stopped 100 feet away. It will be seen, therefore, that the question at this point is a decisive one. Proximate cause is a mixed question of law and fact. Is it sufficiently a question of fact under the evidence in this case to warrant submission to the jury? In other words, could a jury assume, and could the court permit the jury to assume, that, if the station signals had been given, the car would not have skidded over the ice onto the track, or that the plaintiff would have stopped her car so far away that the car could not have so skidded? The jury could not properly pass upon such question arbitrarily. The burden was on the plaintiff to show that the collision was the proximate effect of the failure to give the train signals. If the record discloses no evidence of a causal connection, or if the evidence of plaintiff negatives a causal connection, between the failure of the signals and the happening of the collision, the jury has no discretion to find otherwise. In such a case, it is the duty of the court as a matter of law to direct a nonsuit."

In the Barrett case, the driver appreciated the danger that an approaching train might be expected and was prepared to stop upon discovering the train. In the case at bar, the driver intended to stop the car, regardless of whether he heard any signals or not, for the purpose of ascertaining whether or not a train was approaching. In the Barrett case the cause of the skidding was ice. In the case at bar the cause of the skidding was loose gravel. The intention of the driver of the car in the case at bar to stop the car regardless of crossing signals, for the purpose of being in a position to look to ascertain whether or not a train was approaching from the west before attempting to pass over the tracks, demonstrates that the failure to give train signals did not contribute proximately to the accident. The conditions which rendered the driver helpless to control the car could not have been aided by the giving of signals in view of the unexpected conditions which prevented the driver from stopping the car. To permit the jury, under the record, to determine the question of proximate cause would allow it to enter the field of speculation and conjecture. The jury could not be permitted to say that the car would not have skidded on the loose gravel if train signals had been given, or that the car would have been stopped farther away. This is especially true because at the

moment he attempted to stop he was prepared and intended to stop, regardless of signals, and solely for the purpose of placing the car in a position where he could look and see to the west. The record does not disclose a causal connection between the failure to give statutory crossing signals and the happening of the accident. The burden was upon the appellee to show that the collision was the proximate effect of the failure to give the statutory train signals. Since the record discloses no evidence of a causal connection between the failure to give signals and the accident, it was the duty of the court, as a matter of law, to direct the jury to return a verdict in favor of the appellant, and the lower court was in error in failing to so do.

Thus this cause must be, and it is hereby, reversed and remanded.

All Justices concur.