**MEGAN v. STEVENS.**

No. 10761.

Circuit Court of Appeals, Eighth Circuit.

July 23, 1937.

James C. Davis, Jr., of Des Moines, Iowa (James C. Davis, A. A. McLaughlin, and George E. Hise, all of Des Moines, Iowa, on the brief), for appellant.

Jno. A. Senneff, Jr., of Mason City, Iowa (Jno. A. Senneff and W. L. Bliss, both of Mason City, Iowa, on the brief), for appellee.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This is an action at law brought by the appellee, administratrix of the estate of Herbert Stevens, as plaintiff, against the appellant (trustee of the Chicago & North Western Railway Company under appointment of the District Court of the United States for the Northern District of Illinois under the provisions of section 77 of the Bankruptcy Act. [as amended 11 U.S.C.A. § 205]), as defendant, to recover damages for the death of Stevens. From a judgment for the plaintiff entered upon a verdict of a jury, this appeal is taken.

Herbert Stevens came to his death at about 9:30 o'clock on the night of January 28, 1936, at Dumont, Iowa, when the automobile in which he was a guest passenger collided with a gondola freight car of defendant which was standing upon the grade crossing where the track of the railway company intersected Highway No. 10, a paved and well-traveled highway. There is no dispute in the evidence as to the manner in which the accident happened. There is a conflict as to the length of time that the train, of which the freight car was a part, blocked the crossing, and as to the extent to which visibility was affected by falling snow. The members of the train crew estimate the time that the crossing was blocked prior to the accident as four or five minutes, the time that was required to perform the switching operation hereafter referred to. A witness for the plaintiff estimates the time as twenty minues. In so far as the evidence is in conflict, we must, of course, accept that view of it most favorable to the plaintiff.

It appears from the undisputed evidence that the train had stopped at Dumont to deliver a car consigned to that place. This car was the first car behind the engine. The train had stopped, the car had been spotted upon the industry track, and the engine was on its way back to couple to the train when the accident occurred. The train could have been stopped short of the crossing or could have been broken at the crossing, and the switching operation could have been performed without leaving at any time a standing car upon the crossing. The night was dark and it was snowing. It was a damp snow and came in flurries, affecting visibility.

Fisher, the experienced driver of the automobile, the only eyewitness of the accident, gives the following account of what occurred: The automobile was a 1933 Chevrolet in good condition as to brakes and lights. There was a windshield wiper on the driver's side. Just before the accident, he was driving at 30 miles an hour, a speed at which he estimated he could stop his car within 50 feet, which was well within the assured clear distance ahead of him as disclosed by the lights of his car. He testified: "As we came into Dumont I was driving about 30 miles an hour. I didn't feel that that was a dangerous rate of speed. At times you could see pretty far out ahead of you. As we came into Dumont I could see objects ahead of me for about 100 feet. My opinion is from the times I had had to stop, and the experience I had had on the road as I came into Dumont, that with the brakes in the condition mine were I could stop my car on that road No. 10 in the condition it was in about 50 feet. The only thing that would have prevented my stopping within 50 feet would be some ice concealed under the snow that I didn't know about. There was enough snow falling so that there was a light covering over parts of the highway. I couldn't see all the surface of the highway all the time. That was true as I came into Dumont. My lights were burning in bright beam." The reason

he could not see the freight car sooner was "on account of the snow, probably snow sticking on the cars, that my lights sort of shone under the train." There was snow on the side of the train, and no lights in the vicinity of the crossing. He knew that there was a grade crossing at Dumont. He was alert and looking straight ahead. He first saw the train standing across the highway when he was 50 to 75 feet from the crossing and at a point opposite a driveway intersecting Highway No. 10, which point is shown by a blueprint in evidence to be about 70 feet from the main track upon which the collision occurred. He put on his brakes immediately, but skidded into the train. There was ice under the snow, and if it had not been for the ice under the snow he could have stopped his automobile before it collided with the train.

In her complaint the plaintiff charged negligence in the following respects: (1) Failure to maintain a flagman or a signaling device at the crossing. (2) Unnecessarily blocking the highway. (3) Blocking the highway for an unreasonable length of time. (4) Failure to take precautions to protect the deceased in view of existing weather conditions. (5) Failure to break the train so as to have the highway clear. (6) Failure to look out for and apprise travelers on the highway of the presence of the train, in view of weather conditions.

The defendant trustee denied that he was guilty of any negligence which caused or contributed to the happening of the accident. He charged that Stevens was guilty of contributory negligence.

On the trial, at the close of the evidence, the defendant moved for a directed verdict. This motion was denied, and the court submitted the case to the jury. The following portion of the court's charge, much of which was excepted to by the defendant, clearly indicates the theory upon which the case was submitted: "Now, Gentlemen, I charge you that a railway company has the right, in its reasonable and ordinary course of business, and under proper conditions, to stop its trains upon crossings at highways, even though it blocks traffic and temporarily excludes the use of the highway over the crossing by those traveling thereon. I further charge you that a railway company is not obliged under the law to maintain flagmen or watchmen or install signal devices, under all conditions, at ordinary highway crossings, even though such highway be an arterial one. On the other hand, railway companies or those operating railways, in using their tracks at points crossing arterial highways in cities and towns, should consider the time and circumstances of stops at such crossings, including weather conditions, and avoid unnecessary blocking of the highway at times when such use would be likely to endanger the lives of the traveling public upon the highway, and in such circumstances those operating railways should refrain from blocking such highways for an unreasonable length of time. As to whether the leaving of the cars upon the travelled portion of the highways so as to block traffic thereon would constitute actionable negligence would depend upon the conditions present. If a railway company, in the course of operating its trains, has occasion to stop a train, or some of the cars thereof, on the travelled portion of an arterial highway within the limits of a town, where the traffic is heavy, in the nighttime, during a storm, and under conditions which greatly reduce the visibility of those traveling upon the highway, then the railroad company would be held to a higher degree of care in its use of the highway than under normal conditions when the visibility was not obscured and the train could be readily seen by those approaching on the highway; and in such cases the highway should not be permitted to remain blocked and unguarded for an unreasonable length of time, and in case of prolonged use of the crossing by a railway company, a storm might be so severe, and visibility so poor, that reasonable care and caution on the part of the railway company might require the presence of a watchman with a signal light, at the point of obstruction. In circumstances such as we are now considering, it would be a question of fact, whether the action and conduct of those operating the railway train, considering all of the conditions present, constituted actionable negligence. So, in this case, if you find from a preponderance of the evidence that those operating defendant trustee's train left a car or cars upon the travelled portion of the highway for an unreasonable time, in the circumstances an unnecessary length of time, unguarded, during a storm, and at a time when, by reason of such storm or other weather conditions, visibility to those traveling upon the highway was so obscured that the presence of the cars upon the highway could not be discovered, then the defendant so doing would be liable in damages to one injured thereby, provided the person injured has not been proven guilty of con-

422

tributory negligence contributing to his injury and death."

■ Whether the charge of the court as to the issue of negligence was correct in view of the evidence, whether the question of negligence was, under the evidence, one of law for the court or one of fact for the jury, and other questions presented by the assignment of errors, we think it is not necessary to determine, for the reason that, under a rule announced by this court in Hickey v. Missouri Pacific Railway Corporation, 8 F.(2d) 128, the negligence of the defendant, if any, was not to be regarded as a proximate cause of the death of Stevens, and therefore the defendant was entitled to a directed verdict.

In the Hickey Case a father was in an automobile being driven by his son. The son was an experienced driver—as was the driver of the automobile in which Stevens rode. There, as here, the automobile was approaching a grade crossing. The driver had seen no train and had heard no signal. When 20 feet from the crossing, and while the automobile was going about 8 miles an hour, he saw a train approaching about 200 feet away. He applied his brakes, which were in good condition. With the brakes on, the car skidded ahead toward the track because of ice on the road, of which the driver knew nothing. The automobile was struck by the train, and the father was killed. Had it not been for the ice, the driver could have stopped the car in 8 or 9 feet and the collision would not have occurred. This court said [pages 129 and 130 of 8 F. (2d)]:

"Assuming the truth of the testimony for the plaintiff as to the presence of ice in the highway, we are of the opinion that the ice and not the negligence of the defendant was the proximate cause of the accident. When the plaintiff was at least 20 feet from the crossing, he admittedly became aware of the approaching train. He then had ample time to stop the automobile. He testified, 'I saw the train coming in time to have stopped the car if it had not been for the ice.' Again, 'There is no question in my mind but that when I first saw the train I had sufficient distance in which to stop the car and avoid the accident but for the ice.' And again, 'but for the ice * * * I could have stopped that car in 8 or 9 feet.'

"It is claimed on behalf of the plaintiff that, if the usual signals had been given, he would not have driven the automobile so near the crossing as 20 feet before applying the brakes. Whether this claim is anything more than an afterthought may be open to doubt. There was no testimony showing how far from the railroad track plaintiff would have tried to stop if he had heard any signals from the approaching train. Furthermore, it is pure speculation whether, if the brakes had been applied at a distance from the crossing of 30 to 40 feet, the accident would not have happened just the same. There is no evidence in the record that the condition of the road 30 or 40 feet from the crossing was any different from the condition within the 20-foot limit. If the usual signals had been given by those in charge of the train, and if the brakes had been applied to the automobile when at a distance of 30 or 40 feet from the crossing, yet, if the icy condition which plaintiff claims existed within the 20-foot limit extended as far back as 30 or 40 feet, the accident might very likely have happened, notwithstanding the attempt to stop the automobile 30 or 40 feet from the track.

"Such being the facts disclosed by the record, we hold that within the rules announced in the foregoing cases, the failure by defendant to give customary signals when the train was approaching the crossing, if such failure in fact existed, was not the proximate cause of the accident."

The negligence charged in the Hickey Case was failure to warn of the approach of a moving train. The negligence charged in this case is the unreasonable and unnecessary obstruction of a highway, in view of weather conditions, coupled with the failure adequately to warn travelers on the highway of such obstruction. We are unable satisfactorily to distinguish the two cases so far as the question of proximate cause is concerned. If the presence of ice in the Hickey Case was the sole proximate cause of the accident, so it was in this case. The train in the Hickey Case was, without warning, run onto the crossing in time to strike the Hickey car. Here, the train was left upon the crossing, during a snowstorm, without any precautions being taken to warn travelers on the highway of its presence, and the automobile collided with it. In each of the cases the plaintiff's own testimony was to the effect that the accident, in spite of the alleged negligence of the defendant in failing to give adequate warning of a dangerous situation, would not have happened except for the presence of the ice, which was something entirely unforeseen

and for which the defendant was in no way responsible.

It is argued in this case that the collision was the result of two concurring or cooperating causes: (1) The presence of the freight car upon the crossing; (2) the presence of the ice upon the highway; and that, since the obstruction of the crossing was due to negligence of the defendant, and since that negligence at least contributed to the happening of the accident, the defendant is liable.

If it was negligence for the defendant to use the crossing at all while it was snowing, or if to leave a standing car upon it was, in and by itself, a negligent and wrongful act which might reasonably be expected to cause such an accident as this, we think it could be held that the wrongful obstruction of the crossing and the unforeseen presence of ice on the highway concurred in causing the death of Stevens, since if the crossing had been left clear the presence of ice on the highway would not have caused this accident. But the unreasonable and unnecessary presence of the train at the crossing, combined with the failure adequately to warn of that presence, constituted the alleged proximate cause of this accident. A train crew would, we think, hardly be required to anticipate or to foresee that any person prudently using the highway who had received timely warning or notice of the presence of a train upon a crossing would, nevertheless, be likely to collide with the train. Regardless of the train crew's failure to warn, according to the plaintiff's evidence the driver had seasonable notice of the presence of the train. He was in a place of apparent safety when he saw the train. He could then have stopped in time to avoid a collision, except for the ice. It was then that an unforeseen cause, which had no relation to the train crew's failure to warn and no connection with the train being too long upon the crossing, came into play and resulted in the automobile skidding into the train. A finding that, had the driver known sooner than he did that the freight car was across the highway, he would have attempted to stop before he did, and that his attempt would have been successful, would be based upon pure speculation. He did not so testify, and there is no evidence as to how far from the crossing the ice under the snow extended.

If the death of Stevens had been due to the combined negligence of the defendant and of the driver of the automobile in which he was riding, the defendant would be liable, Miller v. Union Pacific R. Co., 290 U.S. 227, 54 S.Ct. 172, 78 L.Ed. 285; but the evidence disclosed that the driver was not negligent. Also, if the evidence showed that negligence of the defendant and the presence of the ice were inseparable cooperating factors which united to cause the collision, the defendant would be liable, Atlantic Coast Line R. Co. v. Hendry, 112 Fla. 391, 150 So. 598; Johnson v. Kosmos Portland Cement Co. (C.C.A.6), 64 F.(2d) 193 (certiorari denied, 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557.) But if the presence of ice was an "intermediate cause disconnected from the primary fault, and self operating," the plaintiff could not recover. Milwaukee & St. Paul Railway Co. v. Kellogg, 94 U.S. 469, 475, 24 L.Ed. 256.

This court, in the Hickey Case, regarded the presence of ice as the independent and self-operating cause of the collision of the Hickey car with the train. There are similar rulings by other courts, including the Supreme Court of Iowa. Barrett v. United States Railroad Administration, 196 Iowa, 1143, 194 N.W. 222; Stroud v. Chicago, M. & St. P. Ry. Co., 75 Mont. 384, 243 P. 1089; Pifer v. Chicago, M., St. P. & P. R. Co., 215 Iowa, 1258, 247 N.W. 625 (failure to stop, due to loose gravel). The three cases above cited involved collisions with moving trains. The same rule was applied by the Supreme Court of Vermont to a collision with a standing train, in Gilman v. Central Vermont Ry. Co., 93 Vt. 340, 107 A. 122, 125, 16 A.L.R. 1102. That case is scarcely distinguishable from this. The train was unlighted; the crossing unguarded; the visibility poor; the driver of the car did not discover the train, which it was asserted had unreasonably obstructed the highway, until he was a short distance from it. He could not stop because the road was greasy. While the court held that no negligence on the part of the defendant was shown, it said in the course of the opinion: "If the circumstances attending the accident were as plaintiff claimed, it is apparent that the automobile was not stopped before it struck the train because of the greasy condition of the road. But the defendant was not responsible for this condition, and there was no evidence that the trainmen knew or ought to have known of its existence. Thus, an unusual condition, unknown to the defendant's servants, intervened that changed the plaintiff's situation from one of safe-

ty to that of danger." See, also, Keel v. Seaboard Air Line Ry., 122 S.C. 17, 114 S. E. 761 (collision with moving train; failure to stop due to defective brakes); Atlanta, B. & C. R. Co. v. Mullis, 43 Ga. App. 692, 159 S.E. 893 (collision with piling placed in underpass by railroad company; failure to stop due to defective gear); Kirchner v. State, 223 App.Div. 543, 228 N.Y.S. 718 (collision of two automobiles; defendant's failure to stop due to oil on road).

No case to the contrary has come to our attention, unless the case of Missouri-Kansas-Texas R. Co. v. McLain (Tex.Civ.App.) 74 S.W.(2d) 166, be so regarded. In so far as that case supports a different rule it is in conflict with that followed by the majority of those courts which have been confronted with similar situations.

Our conclusion is that, while it is true that but for the presence of the freight car upon the crossing Stevens would not have been killed, it cannot be said that the presence of the freight car or the failure to warn of its presence proximately caused the collision which resulted in his death. Under the evidence of the plaintiff, the collision would never have occurred except for the ice on the highway, and that was the sole proximate cause of the death.

The judgment is reversed, and the case remanded for further proceedings not inconsistent with this opinion.

THOMAS, Circuit Judge (dissenting).

In my opinion the case was properly submitted to the jury and the judgment appealed from should be affirmed. The importance of the case as a precedent impels me to state briefly my views upon the essential issues.

As I understand the record, the circumstances in evidence present a case in which a jury would be justified in finding that the injury complained of was the result of two concurring causes: (1) The negligent obstruction of the highway on a dark and stormy night coupled with failure to give any warning signal, and (2) the presence of ice on the paved road concealed under the snow. In the absence of either the accident would not have occurred. Since the negligence of the appellant was responsible for the obstruction and the want of warning signals, I think the rule in the case of Miller v. Union Pacific R. Co., 290 U.S. 227, 54 S.Ct. 172, 174, 78 L.Ed. 285, is controlling, and that the doctrine of the case of

Hickey v. Missouri Pacific Railway Corporation (C.C.A.) 8 F.(2d) 128, is not applicable.

The Hickey Case is distinguishable from the present case upon the very point upon which the decision in that case turns. In the Hickey Case the negligence charged was failure to give the customary warning signals by a moving train approaching a highway crossing in the country in day time. In the present case the negligence is the act of leaving a train during a storm at night when visibility was low standing across an arterial highway unlighted and without warning signals of any kind for an unreasonable and unnecessary length of time. In the Hickey Case the decision is predicated upon the fact that had the usual warning signals been given the automobile involved would then have been within a distance of 30 or 40 feet of the crossing and that there was no evidence as to the distance which the ice in question extended back along the road. Under these circumstances, it was held that the ice on the highway was the proximate cause of the injury; that the ice was an intervening cause and the failure to give the signals a remote cause only; all on the ground that it was "pure speculation whether, if the brakes had been applied (on the automobile) at a distance from the crossing of 30 or 40 feet, the accident would not have happened just the same."

In the present case no signals were given, and the driver could not see the train until he was within 50 to 75 feet of the crossing. It was then too late to avoid the collision because of the ice. But, had the train crew given the signals usually given at night to indicate the presence of an obstruction across the highway, the driver of the automobile might have seen them at a distance of a quarter of a mile or more. Had such signal been visible for a distance of 200 or 300 feet only, the speed of the automobile could no doubt have been reduced and the accident avoided. The element of speculation present and controlling in the Hickey Case is entirely absent here; for the brake could have been applied by the driver or the propelling power cut off, with proper signals, before the automobile came within the zone where to stop was either impossible or speculative.

To deny recovery on the ground that the driver of the automobile could have stopped before the collision occurred after seeing the obstruction had it not been for the ice,

under the circumstances of this case, seems to me an unsound rule and a dangerous precedent. It amounts in my opinion to holding as a matter of law that a railroad may negligently and unnecessarily block an arterial highway crossing without giving warning signals to travelers without reference to such circumstances as light or darkness, heat or cold, wet or dry, calm or storm, flood, wind or lightning. The decision in the Hickey Case does not support such a proposition. Under the circumstances of this case, I can not agree that the "driver had seasonable notice of the presence of the train." The train crew should have foreseen the danger and taken proper measures to avoid it. The rule is stated in 45 C.J. 934 as follows: "If the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury. Under such rule the ordinary forces of nature and condition of the weather, such as cold, heat, wind, or a rainstorm or snowstorm, which are usual at the time and place, are conditions which reasonably could have been anticipated, and will not relieve from liability the person guilty of the original negligent act or omission."

In The Mariner (C.C.A.5) 17 F.(2d) 253, 254, the rule is stated as follows: "One is chargeable with knowledge of the usual effect of ordinary natural conditions or forces upon his negligent act or omission, and is held to have contemplated the appearance and the effect of such conditions and forces upon his negligence. Atchison, etc., Ry. Co. v. Calhoun, supra [213 U.S. 1, 29 S.Ct. 321, 53 L.Ed. 671]; Bowen v. Smith-Hall Grocery Co., 141 Ga. 721, 82 S.E. 23, L.R.A.1915D, 617; Benedict Pineapple Co. v. Atlantic C. L. R. Co., 55 Fla. 514, 46 So. 732, 20 L.R.A.(N.S.) 92; Fox v. Boston & Maine Railroad, 148 Mass. 220, 19 N.E. 222, 1 L.R.A. 702; 22 R.C.L. 140."

See, also, Johnson v. Kosmos Portland Cement Co. (C.C.A.6) 64 F.(2d) 193.

Here every element of the situation should have put the train crew on guard. The place was in Northern Iowa, the time January 28th (midwinter), and the night dark with damp snow falling. The train was stopped an unreasonable and unnecessary length of time without light or warning across a paved arterial highway. The train crew should have foreseen that travelers in automobiles would approach the crossing frequently; that the pavement was no doubt icy; and that the darkness and storm would conceal the presence of the train from drivers, unless they were warned, until it was too late to stop and avoid harm. Without warning signals the situation created by the obstruction was a trap which no motorist on the highway could avoid by the exercise of any ordinary foresight.

Under the circumstances here disclosed, I am convinced the question of proximate cause was properly submitted to the jury. Two forces actively operated to produce the injury—the original negligence of the train crew and the ice. . The burden was on defendant to show that the ice was the sole, sufficient, independent operating cause. Atlantic Coast Line R. Co. v. Hendry, 112 Fla. 391, 150 So. 598; Durst v. Wareham, 132 Kan. 785, 297 P. 675; Paul v. Atlantic Coast Line R. Co., 170 N.C. 230, 87 S.E. 66, L.R.A.1916B, 1079; Anderson v. Minneapolis, St. P. & S. S. M. Ry. Co. 146 Minn. 430, 179 N.W. 45; Torts, Restatement, § 432, Comment c. In such case the rule is stated in Torts, Restatement, supra, as follows: "In order to prevent the actor's negligent conduct from being a substantial factor, *it must clearly appear that the required precautions would have proved unavailing* or that the harm would have been sustained even had the negligent act not been done." (Italics supplied.) It has not, in my opinion, been "clearly" shown as a matter of law that the accident would have occurred because of the presence of the ice had timely warning signals been given by the train crew.

Two circumstances have been suggested as establishing the theory that the presence of the ice was an independent and intervening cause. They are: (1) That the law of Iowa requires drivers to keep their automobiles under such control that they can stop within the clear distance ahead; and (2) that the headlight of the automobile revealed the presence of the obstructing train at a distance of 50 to 70 feet when except for the ice the automobile could have been stopped and the collision avoided. This suggestion would have great force if the driver of the automobile were the plaintiff, but his negligence, if any, cannot in a federal court be imputed to appellee's decedent. Miller v. Union Pacific R. Co., supra.

It is pointed out above that the distinction between the instant case and the Hickey Case lies in the effect of warning signals under the contrasting situations presented by the facts of the two cases. These dif-

ferences call for the application of different rules of law. Railroads and travelers on highways have correlative rights at crossings. The railroad has the superior right of passage. Richard v. Maine Central Railway, 132 Me. 197, 168 A. 811. It also has a right to occupy a crossing for a reasonable time when necessary to perform its duties as a common carrier. Mabry v. Union Pacific R. Co. (D.C.Colo.) 5 F.Supp. 397, 399. Otherwise a railroad has .no greater right to obstruct a highway crossing at night without warning signals than does a farmer, a truck driver, a municipal corporation, or any one else.

I am of opinion that the negligence of the train crew and the presence of the ice were concurring causes, and not independent. The case of Miller v. Union Pacific R. Co., supra, is an instance in which the alleged intervening cause was the act of a third person. In that case a husband driving the automobile involved, with his wife seated by his side, drove in front of a moving train approaching in plain sight of the driver. The train was being negligently operated in that it was exceeding the speed limit provided by ordinance of the city where the accident occurred. Both occupants of the automobile were instantly killed. In the case of the wife's estate against the railroad company for her wrongful death it was urged that the proximate cause of her injury was not the negligence of the company but that of the husband in driving upon the track in the face of an approaching train. Upon this question the Supreme Court said:

"The validity of this contention depends altogether upon whether the negligence of the husband constituted an . intervening cause which had the effect of turning aside the course of events set in motion by the company, and in and of itself producing the actionable result. The evidence here does not present that situation. Instead of a remote cause and a separate intervening, self-sufficient, proximate cause, we have here concurrent acts, co-operating to produce the result. * * *

"Assuming, upon these facts, that a finding by the jury that the train was negligently operated would be justified, such negligence continued without interruption down to the moment of the accident. The same is equally true in respect of the contributory negligence of the driver of the automobile. The result, .therefore, is that the contributory negligence of the driver

did not interrupt the sequence of events set in motion by the negligence of the railroad company or insulate them from the accident, but concurred therewith so as to constitute in point of time and in effect what was essentially one transaction."

The rule is stated in respect to its general application in First Shearman & Redfield on Negligence (6th Ed.) § 39, as follows: "It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the 'act of God' or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that, if the negligence of the defendant concurs with the other cause of the injury, in point of time, place or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage. But, if the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury." (Quoted with approval in American Coal Co. v. De Wese (C.C.A.4), 30 F.(2d) 349, 352). See, also, 45 C.J. 939, § 499.

It is clear in the light of the authorities cited that in considering the question of intervening and concurring causes no distinction is drawn between the act of a third person and a force of nature. Since the negligence of the driver of an automobile is not imputed in the federal courts to a passenger, the original negligence of the defendant is not excused by a concurring cause whether it be the deliberate and careless act of the driver or the presence of ice on the road. Further, the original negligence of the defendant being established, whether the second force is one of nature, or the act of a third person, is immaterial in determining whether such second force is a concurring or an intervening and self-sufficient cause.

The fact that "the collision would never have occurred except for the ice on the

highway" does not aid the appellant. As in the Miller Case, supra, where the act of the driver of the automobile did not "in and of itself" produce the injury, so here it cannot be said that the presence of the ice "in and of itself" would have produced the injury.

The observation that the presence of the ice upon the highway "had no relation to the train crew's failure to warn and no connection with the train being too long upon the crossing" is irrelevant in determining the responsible cause. It is equally apparent that the negligent · operation of the train in the Miller Case had no relation to nor connection with the motorist's act in negligently driving in front of the moving train. In both cases the two causes were concurrent in time, and they contributed to the same event, but they were not otherwise related or connected. It cannot be a defense in the instant case that the appellant was not responsible for the presence of the ice on the highway any more than it was in the Miller Case that the defendant was not responsible for the act of the motorist in deliberately driving in front of the train when its approach was in plain view for several hundred yards.

Finally, the rule applies in this class of cases, as in all others, that where the evidence is such that reasonable men may draw different conclusions therefrom, the question is for the jury. St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala. 613, 614 So. 215, 56 A.L.R. 1110. For these reasons I think the judgment should be affirmed.