### GARNER v. PRESCOTT.
No. 2829.

Court of Civil Appeals of Texas. Eastland.
Nov. 3, 1950.

Rehearing Denied Dec. 1, 1950.

Nelson, Montgomery & Robertson, Wichita Falls, for appellant.

Reily, Reily & Spurr, Shawnee, Okl., Donald & Donald, Bowie, for appellee.

GRISSOM, Chief Justice.

As the result of a collision between an automobile driven by Roy Tripp and a truck driven by Jesse Lester Garner's son, Thural Garner, Cecil Lee Prescott was injured and his wife and son were killed, while riding in Tripp's automobile. Prescott brought suit for damages thus sustained. Prescott alleged that he and his wife and minor son were traveling from the South Plains of Texas to Oklahoma as the guests of Tripp; that, early one morning in February, Tripp was driving his automobile east when he came to a strip of pavement coated with ice; that they were traveling about 35 miles an hour on their right-hand side of the pavement when they observed Garner's truck, 150 or 200 yards away, traveling west toward them, in the center of the pavement; that Garner's truck was traveling at an excessive rate of speed, to-wit, more than 60 miles per hour; that Tripp slacked his speed and pulled his car to the right and plaintiff anticipated the driver of the truck would reduce its speed and pull to its right side of the pavement; that the driver of the Garner truck did not reduce its speed or pull to its right side; that, in an attempt to avoid being struck by the truck, Tripp pulled his car to the south shoulder and gently applied the brakes, whereupon, his automobile, suddenly and without notice, turned its front end to its left, or north, but that Tripp's car was still on its right-hand side of the pavement; that Garner's truck continued at the same speed in the center of the pavement and ran into Tripp's automobile, injuring plaintiff and killing his wife and son.

Plaintiff alleged Garner's truck had a trailer mounted with double tanks for transporting butane gas; that it belonged to defendant, Jesse Lester Garner, and was being operated by his son, Thural, acting in the course of his employment by his father; that Thural was guilty of negligence, which was a proximate cause of plaintiff's injuries and the death of his wife and son, as follows: (1) in operating said truck in excess of 35 miles per hour, to-wit, at a speed in excess of 60 miles per hour; (2) in driving on the wrong side of the road; (3) in not keeping a lookout for other vehicles; (4)

in not having the truck under control; (5) in driving at an excessive speed "when the pavement was covered with ice" and (6) in driving in the center of the pavement.

Defendant answered, among other things, that Thural Garner was driving Garner's truck west in a careful and prudent manner; that the morning was cold and the paving, for five or more miles east of Seymour, was covered with ice; that 'four or five miles east of Seymour the automobile in which the Prescotts were riding started to skid on ice covering the pavement and skidded north across the pavement to said automobile's left-hand side of the pavement and into defendant's butane truck, which was being operated on its right-hand side of the pavement; "that the icy condition of the pavement at the time and place in question constituted a new and independent cause of the injuries and damages, if any, which were suffered by plaintiff for which the defendant is not responsible, and without which the plaintiff would have sustained no injury or damage." Garner alleged the driver of his truck could not have foreseen that some person driving an automobile east along the highway and approaching defendant's truck would, suddenly and without warning, lose control of his automobile and skid on the ice across the highway to the automobile's left-hand side of the highway into defendant's truck, which was traveling on its right-hand side of the highway.

The jury found, among other things, (12) that Thural Garner was driving the truck immediately prior to the collision at 45 miles per hour; (13) that such speed was negligence and (14) a proximate cause of the collision; (15) that Thural "failed to use ordinary care * * * to keep a proper lookout" for other vehicles going east on the highway; (16) that this was negligence and (17) a proximate cause of the collision. The jury found (18) that Thural operated the truck on its left-hand side of the highway; (19) that this was negligence and (20) a proximate cause of the collision; (21) that Thural failed to keep the truck under proper control; (22) that this was negligence, and (23) a proximate cause of the collision; (24) that Thural drove the truck at an excessive speed when the pavement was covered with ice; (25) that this was negligence and (26) a proximate cause of the collision; (27) that Thural drove the truck down the center of the highway immediately prior to and at the time of the collision "when automobile in which plaintiff, wife, and son were riding were entitled to use its right side of pavement"; (28) that this was negligence and (29) a proximate cause of the collision. The jury found (30) that Thural, by the use of ordinary care, could not have stopped the truck prior to the collision; (31) that Thural's failure to stop was not negligence and (32) not a proximate cause of the collision. The jury found that the collision was not an unavoidable accident.

The jury found that plaintiff had suffered damages amounting to $2,000.00; that he was also damaged $2,500.00 by the death of his wife, $750.00 by the death of his son, and that he had expended $961.50 for the funerals. The court rendered judgment for Prescott for said amounts and Garner has appealed.

■ Appellant contends the court erred in refusing to include in the definition of proximate cause the term new and independent cause, to define it and to submit to the jury the defense of new and independent cause. As heretofore shown, appellant alleged that the icy condition of the pavement was a new and independent cause of the collision. Defendant did everything necessary to obtain the inclusion of such term in the definition of proximate cause and to require the court to submit the issue of new and independent cause to the jury, provided the evidence raised the issue. Phoenix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.2d 60, 61.

The versions of appellees and appellant, substantially as set out in appellant's brief, are as follows:

Appellee's version: Garner's truck was being driven down the middle of the highway 60 to 65 miles per hour; the truck did not slack its speed nor pull to its right prior to the collision. When the truck was about 100 yards distant, Tripp blew his horn but

the truck did not move to its right. Neither Tripp nor the occupants of his car knew ice was on the highway. Tripp then started to pull off the pavement to his right. When the right wheels of Tripp's car went off its right side of the pavement the car skidded and went sideways with its back wheels on the shoulder of the pavement and its front wheels on the pavement but still south of the center line, that is, on its right-hand side; that Garner's truck continued down the middle of the highway at 60 to 65 miles per hour, and ran into Tripp's automobile.

Appellant's version: From Seymour east to the scene of the collision the highway was covered with a thin, transparent sheet of ice. Thural saw the Tripp automobile approaching him, going east, about 300 yards away. Tripp's automobile was weaving slightly on the road. The truck was then on its right-hand side of the highway going west. As the vehicles approached each other the Tripp automobile continued to weave and finally began to skid sideways. Thural Garner "let up on the gas" and started slowing down all he could, pulling as far to the right as possible prior to crossing a culvert 100 yards ahead. By the time Thural had crossed the culvert the Tripp automobile had gotten into the middle of the highway about half way across the center line and was skidding sideways. As soon as the truck passed the culvert, Thural drove off the pavement to his right (north) shoulder of the highway. During all this time Thural was slowing the butane truck, using his trailer brakes and, finally, the brakes on the truck. The Tripp automobile continued skidding north, on to its left-hand side of the highway, until it got to the north borrow pit and hit appellant's truck, the right front portion of the Tripp automobile striking the left front portion of Garner's truck.

■ The question is whether or not the evidence raised the issue of new and independent cause. Young v. Massey, 128 Tex. 638, 101 S.W.2d 809. Ice on a highway may constitute a new and independent cause of a collision. See Berg v. New York Cent. R. Co., 391 Ill. 52, 62 N.E.2d 676; Megan v. Stevens, 8 Cir., 91 F.2d 419, 113

A.L.R. 992; Hickey v. Missouri Pacific Railroad Corporation in Nebraska, 8 Cir., 8 F.2d 128; Barrett v. United States Railroad Administration, 196 Iowa 1143, 194 N. W. 222. After careful consideration we have concluded that the evidence is sufficient to raise the issue. 65 C.J.S., Negligence, § 111, pp. 688, 700; Tarry Warehouse & Storage Co. v. Duvall, 131 Tex. 466, 115 S.W.2d 401, 405; Phoenix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.2d 60, 62.

■ There was evidence to the effect that ice on the pavement caused Tripp to lose control of his automobile and caused his car to skid across the pavement to its left-hand side and strike appellant's truck while it was in the borrow pit on its right-hand side of the highway. The evidence does not conclusively establish that one operating the truck in the manner Thural says he was should have anticipated such action. Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063, 1065; 65 C.J.S., Negligence, § 111, p. 697. Whether or not the ice was an intervening cause which broke the chain of causation between Thural's alleged negligence and appellee's injuries was a question for the jury. See 65 C.J.S., Negligence, § 111, p. 688; Mitchell v. Gooch, Tex.Civ. App., 210 S.W.2d 834. An independent intervening act may break the causal connection between the original negligence and the injury although such act is not negligent. An inanimate object may be an intervening cause. 65 C.J.S., Negligence, § 111, p. 691.

Appellant's second point is that the court erred in admitting testimony before the jury that Thural Garner did not hold a driver's or commercial operator's license after appellant had admitted in open court that on the occasion in question Thural was the agent of appellant and was acting in the scope of his employment. Prior to the time any testimony was offered to advise the jury that Thural did not have a license and that this fact was known to appellant when Thural started on the trip, the appellant, in open court, for the record but in the absence of the jury, admitted that Thural

was appellant's agent and that he was acting within the scope of his employment by appellant and requested the court to instruct appellee's counsel to refrain from questioning witnesses with respect to the fact that Thural did not have a license and that appellant had knowledge of that fact. The court refused to so instruct appellee's counsel and admitted the testimony. Such testimony was objected to on the ground that it was not offered for impeachment purposes; that, in the light of appellant's admission, the testimony could serve no useful purpose, as it was not material for the purpose of fixing liability on appellant for any negligent act of the driver of said truck and that the failure of appellant's driver to have a license could not be a proximate cause of the collision and, further, because the testimony was offered for the purpose of prejudicing and inflaming the minds of the jury against appellant.

Both appellant and appellee depend on Mundy v. Pirie-Slaughter Motor Company, 146 Tex. 314, 206 S.W.2d 587, for their contrary contentions as to the admissibility of such testimony. Appellee alleged in various ways that Thural had no license; that appellant knew it and that permitting Thural to operate a truck on the highway without a license was negligence and a proximate cause of the collision.

In paragraph 13 of his supplemental petition, appellee alleged that, in addition to the negligence set forth in his original petition "committed by Thural as agent for defendant" appellant was liable, as a matter of law, for the damages resulting from such operation by Thural; that appellant knew Thural had no license but, nevertheless, knowingly permitted him to drive said truck upon the highway and, in so doing, was guilty of negligence as a matter of law, which was a proximate cause of plaintiff's injuries and damages. See Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063, 1065.

Appellant contends that the Mundy case constitutes no authority for the admission of such testimony, and that this case should be distinguished from the Mundy case; that

such testimony was not material for the purpose of proving a causal connection between appellant's negligence and appellee's damages because appellant had admitted that Thural was his agent and that he was acting in the scope of his employment. In the Mundy case, the Supreme Court said that the basis upon which it was claimed that defendant was liable was that defendant's agent permitted Dickson to drive its automobile when they knew or, by the exercise of ordinary care, should have known, that Dickson was an incompetent and reckless driver. That, in connection with said contention, plaintiffs had alleged defendant knew, or should have known, that defendant's minor employee did not have a driver's license. The trial court sustained exceptions to such allegations on the ground that it was immaterial because failure of defendant's driver to have a driver"s license could not have been a proximate cause of the accident. The trial court excluded evidence that said driver did not have a license and that defendant knew it. The controlling question was whether the trial court erred in sustaining said exception and in excluding evidence that defendant's minor employee did not have a driver's license and that defendant knew, or should have known, that fact. Our Supreme Court pointed out the fact that our statute requiring automobile drivers to have a license discloses that its principal purpose is to insure a minimum of competency or skill on the part of the drivers for the protection of persons who might be injured or damaged by negligent operation of motor vehicles on the highways. The court concluded that the plaintiff was entitled to plead and prove that the minor employee of defendant did not have a driver's license and that defendant knew it.

 In the instant case the appellee, in addition to alleging the negligence of appellant in knowingly permitting his minor, unlicensed son to drive the truck, alleged many specific acts of negligence on the part of said unlicensed driver, including the allegation that he drove at an excessive rate of speed on the icy pavement and that he drove

down the center of the highway. We conclude that evidence that the driver did not have a license and that defendant knew that fact was admissible. Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587, 590. The rule is stated in 5 Am.Jur. 847 as follows: "In a majority of jurisdictions the fact that a motor vehicle, or the driver of such a vehicle, was not licensed as required by statute, will not, as a matter of law, operate to charge the owner or operator with liability for injury or damage caused by its operation on the highway, and the view has been taken in a number of cases that evidence of lack of proper registration of an automobile involved in an accident, or of the failure of the operator to have the required operator's license, is incompetent for the purpose of showing negligence in the operation of the car. It would seem, however, that under regulations which require as a condition to the granting of an operator's license that the applicant submit to and pass a driver's test, and restrict the right to operate to those shown to be qualified, the lack of such license would have a legitimate bearing upon the question of negligence in the operation of an automobile. Accordingly, in some jurisdictions evidence is admissible to show that the operator of a motor vehicle involved in an accident did not have the required operator's license, and in at least one jurisdiction evidence that the automobile was not duly registered is admissible on the question of negligence." See also 60 C.J.S., Motor Vehicles, § 163, pp. 498, 500; 111 A.L.R. 1266; 168 A.L.R. 1383; Kenyon v. Hathaway, 274 Mass. 47, 174 N.E. 463, 73 A.L.R. 156; Hopkins v. Droppers, 184 Wis. 400, 198 N.W. 738; 36 A.L.R. 1156.

Appellant's third point is that the court erred in refusing to submit the issue of sudden emergency. Appellant alleged that the driver of appellant's butane truck was confronted with an emergency not of his own making; that in the emergency he used such care as a person of ordinary prudence would have used under the same or similar circumstances. Appellant properly requested submission of issues inquiring whether the driver of the butane truck was suddenly confronted with an emergency and, if so, whether he then exercised such care as an ordinarily prudent person would have used under the same or similar circumstances. In connection with such requested issues, appellant submitted a definition of emergency. The court refused to submit said issues and definition and such action is assigned as error.

"An automobile driver who is suddenly confronted with an emergency not created through his own negligence and who is compelled to act instantly to avoid a collision is not guilty of negligence if he makes such choice as a person of ordinary prudence placed in such a position might make, even though he does not make the wisest choice." 79 A.L.R. 1278.

This rule has been applied in cases involving collisions of automobiles passing on highways. 79 A.L.R. 1297; 111 A.L.R. 1019, 1020, 1022.

■ The evidence, when considered in the light most favorable to the requested issues and before the verdict, does not conclusively show that the emergency was the creation of appellant's driver nor that it should have been anticipated. See Schuhmacher v. Holcomb, 142 Tex. 332, 177 S.W.2d 951, 953; Blanton v. E. & L. Transport Co., 146 Tex. 377, 207 S.W.2d 368 and Mitchell v. Gooch, Tex.Civ.App., 210 S.W.2d 834. The jury might have concluded that Thural Garner should have immediately applied all of his brakes to both the truck and trailer when he saw Tripp's automobile skidding to its left on the icy pavement; that he should have stopped his automobile sooner, or turned it from its course and the like. We cannot say that, as a matter of law, the issue was not raised. The jury might have found (1) that an emergency existed and (2) that Thural acted as a reasonably prudent person would have under the circumstances of the emergency. We conclude that the evidence was sufficient to raise both issues and that the definition and issues relative thereto requested by appellant should have been given. Dallas Ry. & Terminal Co. v. Young, Tex.

710

Civ.App., 155 S.W.2d 414 (Writ Ref.); Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545, 546; Herndon v. Halliburton Oil Well Cementing Co., Tex.Civ.App., 154 S.W.2d 163, 169 (Writ Ref.); McCrearry v. St. Louis Southwestern Ry. Co., Tex.Com.App., 1 S.W.2d 868, 872; Car & General Ins. Corporation v. Keal Driveway Co., 5 Cir., 132 F.2d 834, 836. See also 38 Am.Jur. 686; 30 Tex.Jur. 690; 5 Tex.Jur. 680; 61 C.J.S., Motor Vehicles, § 535, p. 607; 1 Blashfield Cyclopedia of Automobile Law, 274, Sec. 240 et seq.

We have carefully considered the evidence in connection with appellant's contention that the court erred in refusing to submit the issues of joint enterprise and assume risk and issues dependent upon an affirmative finding thereon. We think said issues are not raised by the evidence. Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022, 1024; Raub v. Rowe, Tex.Civ.App., 119 S. W.2d 190, 192; Franzen v. Jason, Tex.Civ. App., 166 S.W.2d 727 (Writ Ref.); Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951, 952; Ener v. Gandy, 138 Tex. 295, 158 S.W.2d 989, 990; Landers v. Overaker, Tex.Civ.App., 141 S.W.2d 451, 454 (W.D.C.J.); 65 C.J.S., Negligence § 174, pp. 848, 851.

We think the court properly limited the consideration of Tripp's written statement for impeachment only. Appellant was entitled to have issues submitted inquiring whether acts of Tripp constituted the sole cause of the collision. Dixie Motor Coach Corporation v. Galvan, Tex.Com. App., 86 S.W.2d 633, 634. See also Reeves v. Tittle, Tex.Civ.App., 129 S.W.2d 364, 368 (Writ Ref.); Wichita Valley Ry. Co. v. Minor, Tex.Civ.App., 100 S.W.2d 1071, 1073; Montrief & Montrief v. Bragg, Tex. Com.App., 2 S.W.2d 276.

In view of another trial, we respectfully call attention to the following matters: Some of the issues not mentioned were admitted by appellant and there was no need for their submission. 31 C.J.S., Evidence, §§ 361, 381, pp. 1136, 1175. Some were merely evidentiary. See H. E. Butt Grocery Co. v. Johnson, Tex.Civ.App., 226

S.W.2d 501, 506. Issue 27 inquired whether Thural was driving the truck down the center of the highway at the time of the collision "when automobile in which plaintiff, wife, and son were riding were entitled to use its right side of pavement." The quoted statement was improper. See H. E. Butt Grocery Co. v. Johnson, supra.

Other points presented relate to questions that will not probably arise upon another trial.

The judgment is reversed and the cause remanded.