[Civ. No. 4849. Third Appellate District.—December 1, 1933.]

THEODORE THUET (a Minor), etc., Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

W. D. Tillotson and George R. Freeman for Appellant.

L. C. Smith for Respondent.

PLUMMER, J.—The plaintiff in this action, a minor, had judgment against the appellant in the sum of $6,000, for and on account of injuries sustained when an automobile in which he was riding as a guest was struck by a train belonging to and operated by the appellant.

The record shows that on or about the twenty-seventh day of June, 1928, the plaintiff, a minor, was a passenger and guest in a model "T" Ford automobile driven by his father. The automobile was being driven southerly along the state highway south from the city of Redding, until it reached a point known as the "Olney Creek" railroad crossing. At this place the automobile was stopped until other automobiles traveling on the same highway had passed by, when the automobile in which the plaintiff was riding was turned to the left for the purpose of crossing the tracks belonging to the appellant. The record shows that the automobile was stopped at a point about 90 feet from the crossing. From this point the automobile was driven in an easterly direction, and upon reaching the crossing was struck and demolished by a passenger train running northerly, and the plaintiff severely injured.

The complaint alleges, and there is testimony in the record to the effect that the automobile was stopped as we have just stated, and that the driver of the car looked and listened to ascertain the approach of any oncoming train; that from the point where the automobile was stopped until it

reached practically the rails on which the train of the company was being operated, it is impossible to see the approach of the train by reason of trees, underbrush and weeds growing upon the right-of-way of the appellant, and which were permitted and allowed to grow upon said right-of-way to such an extent as to prevent persons using the crossing from seeing the approach of trains.

It is further alleged that the train approached the crossing without any bell being rung or any whistle blown, as provided by section 486 of the Civil Code. There is nothing in the record indicating that the driver of the Ford car stopped, looked or listened after starting from the point which we have stated as being some 90 feet distant from the railroad crossing.

The record shows that neither the driver of the automobile nor the plaintiff saw the approaching train, both testifying that their view was obstructed as herein stated. The record further shows that neither the engineer nor the fireman of the approaching train saw the Ford automobile until after the collision, the fireman testifying that he was sitting on the west side of the cab in the engine, not talking to the engineer, but was facing northward in the direction in which the train was moving, yet he did not see the automobile until after it had been struck by the engine. The record further shows that the railroad, at the crossing in question, runs through a cut which partially obstructs the view of an approaching train.

The trial was had before the court sitting without a jury, and findings were filed sustaining the contention of the plaintiff that no bell was rung and no whistle sounded, as required by section 486, *supra*. Also, that the appellant had allowed weeds, underbrush and trees to grow upon its right-of-way to such an extent as to obstruct the view of trains approaching from the south, and that the crossing in question was a dangerous crossing. That as a result of the collision the plaintiff was severely injured, and that at the time of the trial, which occurred some five years after the injury, the plaintiff was still suffering therefrom. That the injury was caused by reason of the failure of the train crew to ring any bell or blow any whistle. And also, the court further found that no warning was otherwise given of the approach of the train.

The photographs introduced in evidence show only the usual cross-bars. The court further found that the appellant had permitted brush, vegetation, etc., to grow upon the west side of its railroad tracks on its right-of-way to such an extent as to prevent one approaching the Olney Creek crossing from the west to observe the approach of trains running northward. The findings are further to the effect that the injury to plaintiff was caused solely by the negligence of the appellant in failing to ring any bell, blow any whistle, or otherwise give notice of the approach of the train in question.

The contention of the appellant is to the effect that the findings to which we have referred are not supported by the testimony; that the testimony as to the ringing of the bell and blowing of the whistle on the part of the plaintiff is negative in character, while on the part of the appellant the testimony is direct that the whistle was blown at the whistling-post a quarter of a mile distant from, and south of the crossing; and that the fireman testified that the bell was ringing from the whistling-post until after the crossing had been passed.

The contention is also made that the witnesses on the part of the plaintiff were young in years, and that as five years had elapsed between the date of the accident and the time of the trial, their memory was wholly unreliable. This objection, however, would go to the testimony introduced on behalf of the appellant, three or four of whom were interested persons. The reliability of the witnesses and the accuracy of their memories, however, were questions to be decided by the trial court. An examination of the record discloses that at least two of the witnesses on the part of the plaintiff testified directly that no bell was rung and also that no whistle was blown. The testimony of the appellant's witnesses is that the whistle was blown at a point, as we have stated, a quarter of a mile south of the crossing. No contention is made that the whistle was thereafter sounded, which would leave the provisions of section 486, *supra*, uncomplied with so far as giving warning of the approach of the train by the blowing of the whistle. So far as applicable here that section reads: "A bell of at least twenty pounds weight must be placed on each locomotive engine, and be rung at a distance of at least eighty

rods from the place where the railroad crosses any street, road or highway, and be kept ringing until it has crossed such street, road or highway; or a steam whistle must be attached and be sounded, except in cities, at the like distance, and be kept sounding at intervals until it has crossed the same.''

The testimony in the record and the photographs introduced in evidence amply justified the court in concluding that Olney Creek crossing was a dangerous crossing. The trees and shrubbery shown by the photographs indicate that the approach of a train from the south was materially obstructed, and four witnesses testified that the view of an automobile driver from the west approaching the crossing was so obstructed. The photographs also show that the track on which the train was being operated is laid through a cut at the Olney Creek crossing.

The contention is also made by the appellant that the injuries suffered by the plaintiff were due solely to the negligence of the driver of the automobile. As we have stated the record does not show that the driver of the automobile stopped, looked or listened after starting from the point on the state highway where he had paused to allow traffic thereon to pass by before turning eastward. This fact, and the fact that his view was obstructed, calling for the exercise of additional precaution on his part, might very well have led the court to conclude that the driver of the automobile was negligent. This, however, does not relieve the appellant from responsibility, and a holding on our part that the driver of the automobile was negligent as a matter of law would not obviate the finding of the trial court as to the appellant's liability.

[4] In so far as the negative testimony introduced on behalf of the plaintiff, that no bell was rung and no whistle sounded, the rule of law is clear that such testimony is admissible and may be accepted by the court as evidence of such facts.

In the case of *Jones* v. *Southern Pac. Co.*, 74 Cal. App. 10 [239 Pac. 429], this court had occasion to examine this question thoroughly, and in that case cited a number of authorities supporting the rule just stated. It is there held that negative testimony of witnesses who are in a position to hear and to observe who declare they heard no

signals and saw none, even as opposed to positive testimony that signals were given, presents a question to be submitted to the jury, and it has been held such negative evidence is sufficient to sustain a verdict. It would only be useless repetition to again review the decisions upholding the admissibility of negative testimony and the right of the jury to act thereon, considered in the Jones case.

The circumstances involved in the case of *Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 Pac. 788], are readily distinguishable from those surrounding the case at bar by reason of the fact that the plaintiff is not chargeable with the negligence of the automobile driver. If the driver of the Ford car were the plaintiff in this case, then the fact of insufficient view would have imposed upon him, just as in the Koster case, the obligation to stop, look and listen in order that he might determine whether there was an oncoming train, and his failure to exercise such precautions would justify a holding as to his negligence.

Likewise, the facts shown by the record in the case of *Friddle* v. *Southern Pac. Co.*, 126 Cal. App. 388 [14 Pac. (2d) 568], are distinguishable from those we are considering. In the Friddle case the negative testimony consisted of the testimony of a truck driver who was not less than 400 yards from the scene of the accident; there was a loud explosion following the accident involved in that case; and the driver of the truck who gave the negative testimony neither heard the whistle of the train nor the explosion just referred to. The witness, testifying as to not hearing, did not know that anything unusual had happened until he drove his truck to the agreed meeting place. Such testimony of course did not have any evidentiary value.

We find no merit in the contention of the appellant that the plaintiff was guilty of contributory negligence. In the case of *Wagner* v. *Atchison, T. & S. F. Ry. Co.*, 210 Cal. 526 [292 Pac. 645], the court answers this contention made as against the passenger of plaintiff, as follows: "This point is without support, either in the law or the facts. The law does not demand of a passenger the same high degree of observation as it requires of the driver, for the passenger has not, in the ordinary case, any actual control over the driver. He is normally bound to

protest against actual negligence or recklessness of the driver, but the extent of his duty depends upon the particular circumstances of each case and is a question for the jury. (*Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679 [269 Pac. 529]; *Curran* v. *Earle C. Anthony, Inc.*, 77 Cal. App. 462 [247 Pac. 236].)''

In *Switzler* v. *Atchison, T. & S. F. Ry. Co.*, 104 Cal. App. 138 [285 Pac. 918], this court had occasion to set forth the law relative to the contention that a passenger riding in an automobile struck by a moving train was guilty of contributory negligence. It is there said: ''That the negligence of an automobile driver, even in approaching railway crossings, is not imputable, as a matter of law, to a guest or passenger having no control or direction over the operation of the machine, clearly appears by the text found in 3 Cal. Juris., pages 853, 854 and 855, and the authorities in the footnotes supporting the text.'' The cases there cited supporting this rule are so numerous that reference thereto is all that is necessary.

The court found, and there is ample testimony in the record to sustain the finding of the court, that Olney Creek crossing, at the time of the accident, was a dangerous crossing, and while it is not necessary to hold, as many cases do hold, that the permitting of the growth of weeds, underbrush and trees on the right-of-way belonging to the railroad company constitutes negligence *per se*, yet if it adds to the dangerous condition of the crossing it places an obligation upon the company as well as upon one attempting to use such crossing, the taking of additional precautions to avoid accidents. We find the rule as to this question clearly stated in the case of *Young* v. *Pacific Electric Ry. Co.*, 208 Cal. 568 [283 Pac. 61], as follows: ''*Marchetti* v. *Southern Pac. Co., supra,* was an action for damages for death caused by a collision. The court granted defendants' motion for a nonsuit based on the contributory negligence of the deceased. There, as here, the evidence showed the crossing to be dangerous because of existing obstructions, and there was a conflict as to the sounding of proper warnings. On appeal the respondents contended that, even though it should be held there was error on the part of the trial court in granting their motion on the ground of contributory negligence, the order should be

sustained because there was no evidence of negligence on their part in the operation of their train at the time of the collision. In passing upon this contention, the court said: 'It was held in *Green* v. *Southern Pac. Co.*, 53 Cal. App. 194, 202 [199 Pac. 1059, 1062], that the law imposed upon a railroad company the duty to use reasonable care, corresponding to the circumstances constituting the probable danger, to avoid injury to persons lawfully traveling upon the public highway crossed by the company's tracks and trains. It then becomes a question for the jury to decide whether or not it was negligence for the company to run its cars across the highway without providing a flagman or some means of warning to travelers at the place of crossing.' "

In view of the dangerous condition of the crossing involved in this action, we think the trial court had the right to take into consideration the failure of the appellant to have the whistle of its engine blown intermittently from the whistling-post until after it passed the crossing, even though the whistle was actually blown at the whistling-post. The dangerous condition of the crossing, the obstructions to which we have referred, the fact that the track was laid through a cut, called not only upon the automobile driver to take extra precautions, but also placed the same obligations upon the appellant. In the absence of a flagman or a mechanical signal, the lack of an intermittent sounding of the whistle presented a question for the trial court in determining whether the appellant did or did not use the necessary precautions in approaching the crossing.

The court found that the whistle was not blown at intervals as it approached the crossing, and we find no testimony opposing this finding. The court likewise found that the bell was not rung, and the testimony upon the ringing of the bell is conflicting.

While the complaint alleges excessive speed, the court did not make any finding that the injury resulted therefrom. A number of cases are cited by the respondent to the effect that the permitting of the growth of weeds, underbrush and trees on the railroad right-of-way, so as to obstruct the view of one approaching the railroad crossing, is negligence in and of itself. However, as the trial court did not go so far as to hold that the plaintiff is entitled to judgment

from this fact, but only held that the appellant failed to give the warning signals as required by section 486, *supra,* we do not need to determine whether the permitting of such growth and such obstructions constitutes *per se* actionable negligence.

The contention is further made that the judgment is excessive. The finding of the court in this particular is as follows: "That the plaintiff was badly bruised, injured and damaged and received a severe shock, and suffered a dislocation of his right hip, from which he has not recovered, and the ligaments thereof were so badly bruised, torn and strained that he was totally incapacitated for a long time, and has been made permanently lame, and has lost the strength and full use of his right leg, and that said leg has atrophied to some extent."

The testimony shows that the plaintiff was in a hospital for a week, but that as his parents were unable to stand the expense of hospitalization, he was taken home, where he was sick and incapacitated for practically a year. The fact that the injuries found by the court were still apparent after the lapse of five years precludes, we think, any disturbance of the verdict on the ground that it is excessive.

We have not quoted the testimony of the witnesses for the respective parties, on the question of whether the bell was rung or the whistle sounded, for the simple reason that such testimony is conflicting, and the weight and credibility thereof being solely for the trial court.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.