[Civ. No. 9601. Second Appellate District, Division One.—March 16, 1936.]

GLENNA DEE DUNLAP, a Minor, etc., Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Respondents.

Samuel A. Rosenthal for Appellant.

Frank Karr, E. E. Morris and C. W. Cornell for Respondents.

WHITE, J., *pro tem.*—This is an appeal by plaintiff from a judgment entered upon a directed verdict. Plaintiff is the minor daughter of Gussie Dee Dunlap, whose death ensued from a collision between an automobile in which deceased was riding as a passenger and an electrically propelled train of freight cars and caboose operated by defendants Pacific Electric Railway Company and its employees.

The fatal accident occurred about 11 o'clock on a very foggy night on Truck Boulevard at Dominguez Junction, in Los Angeles County, on the road to Long Beach. The defendant railway company operates a line of railway from Long Beach to Los Angeles along its private right of way and over several highway crossings, including the highway crossing here in question. It was testified at the trial that the wigwag signals for trains northbound, the direction in which the train was traveling at the time of the accident, start operating when a train is either 1938 feet from the crossing or a distance of 625 feet from the crossing. These signals are automatically operated by the trolley's coming in contact with a brush installed on the trolley wire. The signals cease

to operate when the engine or head car reaches a point 108 feet north of the center of the highway at the intersection. The automobile in which the deceased was riding was traveling in a southerly direction towards Long Beach, and ran into the side of the train, the impact throwing the decedent out of the automobile and injuring her, from the results of which injuries .she died. At the trial plaintiff sought to establish that the automobile collided with one of the box cars, while the defendant introduced testimony that the automobile came into collision with the rear end of the caboose or last car of the train, and that part of the automobile bumper was removed from the rear steps of the caboose. It was also testified that the step on the rear end of the caboose was bent.

The driver of the automobile testified that visibility was very poor; that at times he could see about fifteen or twenty feet ahead with his lights, and at times the fog was so thick that it just rolled in and he could barely see at all; that his best visibility was between fifteen and twenty feet; that with his headlights he could not see more than fifteen or twenty feet ahead. The heaviness and thickness of the fog and the very poor visibility were conceded by all the witnesses at the trial. The driver of the automobile further testified that the first warning he had that any train was in front of him was when his headlights revealed to him the sight of a box car; that at no time did he see any lights or hear any wigwag working. Other witnesses gave similar testimony. The motorman gave positive testimony that he did blow the train whistle several times before reaching the crossing where the accident happened. He also testified that there is what is called a ''home board'' about five hundred feet south of the crossing, which is a signal that controls the movements of trains over the Southern Pacific tracks at this junction; that before he proceeded over this Southern Pacific crossing he blew one long blast of the whistle to attract the attention of the towerman, and that when the latter gave the motorman a green signal to proceed he acknowledged it with two short blasts of the whistle. The motorman's testimony that he blew the whistle, rang the bell, and that the wigwag was working, was corroborated by the testimony of other witnesses.

Appellant assails the judgment mainly upon the ground that in the face of this conflict of evidence the trial court fell into error in taking the case from the jury and directing a

verdict for defendants.   In this connection it should be noted that there is no conflict in the evidence with respect to the operation of the train after the head car had passed through and beyond the intersection and while the remaining freight cars and caboose were passing through the intersection.

It appears to be the well-established and settled law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit; that a nonsuit or directed verdict may be granted only when, disregarding conflicting evidence, and giving the plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such verdict were given. (*Estate of Flood*, 217 Cal. 763, 768 [21 Pac. (2d) 579]; *Estate of Lances*, 216 Cal. 397 [14 Pac. (2d) 768].) The question presented to us, therefore, is whether the trial court was correct in its conclusion that "the evidence was not sufficient to show any negligence on the part of the railroad company". The court's ruling on this question finds abundant support in the evidence, and is in entire accord with the weight of authority as to the law.

Appellant earnestly insists that it was a debatable question of fact, upon which reasonable minds might disagree, as to whether or not the defendant railway company was negligent in running its cars across the highway on a dark and foggy night without providing a flagman, red flares, or some other means of warning to travelers at the intersection; but the authorities seem to hold that railway companies, through their agents, in the reasonable management of their trains which are rightfully upon a crossing, are not chargeable with knowledge that an automobile, bearing headlights of sufficient power to enable the driver to avoid an obstruction in the road, was nevertheless likely to crash into a moving train unless a danger signal or flagman with a lighted lantern was stationed in the highway. (*Gage* v. *Boston & M. R. Co.*, 77 N. H. 289 [90 Atl. 855, L. R. A. 1915A, 363].) In the instant case the defendant's cars were rightfully occupying the crossing, and the trainmen were exercising due care, so far as the management of the train in approaching and passing over the crossing was concerned.

The accident was not caused by the train running into the automobile in which the deceased was riding, but by the automobile running into defendant's freight train as the latter was slowly passing over the crossing. It was not occasioned by any mismanagement of the train. In the case of *Mabray* v. *Union Pac. R. Co.,* 5 Fed. Supp. 397, it was held that a railroad company has a right to occupy a crossing in the conduct and operation of its business, and that such obstruction is in itself notice of danger, so that the railroad company is not bound to give any further warning; and that after a train has reached a crossing the duty of a flagman ends as to that train, since then the train itself is a sufficient warning. This doctrine also finds support in 52 Cor. Jur., p. 189, and *Brown* v. *Southern Ry. Co.* (*Pennington* v. *Southern Ry. Co.*), 61 Fed. (2d) 399.

No question of the giving of a warning of the approaching train is here involved, because at the time of the accident the engine had passed the crossing and was several hundred feet north thereof. "All crossing signals are intended to protect the traveler against *approaching trains,* and have been so regarded by our courts." (*Mabray* v. *Union Pac. R. Co., supra.*)

The attempted appeal from the directed verdict is dismissed, since no appeal lies from an order of "directed verdict"; and for the foregoing reasons the judgment appealed from is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 14, 1936.