**SOUTHERN PAC. CO. v. HAIGHT.**

No. 9775.

Circuit Court of Appeals, Ninth Circuit.

April 2, 1942.

Rehearing Denied May 16, 1942.

HANEY, Circuit Judge, dissenting.

George R. Freeman, of Willows, Cal., and Horace B. Wulff and Devlin & Devlin & Diepenbrock, all of Sacramento, Cal., for appellant.

M. Mitchell Bourquin, of San Francisco, Cal., and Carter, Barrett & Carlton, of Redding, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

It is alleged in a complaint filed in the Superior Court of the State of California that the plaintiff sustained serious physical injuries in a collision occurring at an intersection of railroad tracks and a public highway in California between an automobile in which plaintiff was riding as a guest passenger and a freight train owned and operated by the Southern Pacific Company, a corporate resident of Kentucky. The action is for compensatory damages and is laid against the named company and two fictitiously named operating employees of the company who are alleged to be residents of California.

The acts of negligence alleged are that there was a failure to maintain at or near the intersection of the railroad tracks and the highway any electric bell or light or gate or other mechanical signal or warning sign; and a failure to provide lights on the railroad cars that obstructed the highway; and a failure to give any signal or warning of the presence of the train on the crossing. The injuries to the plaintiff are alleged to have been caused by the negligence of the defendant Southern Pacific Company in the manner in which it maintained and operated the intersection and the negligence of the employee defendants in failing to provide warning or other notification of the presence of the railroad cars on the intersection.

It is clear that the plaintiff stated a joint cause of action against the Railway Company and the employee defendants, under the rule laid down by this Court in Cheyne v. Atchison, Topeka & Santa Fe Railway Co., 9 Cir., January 22, 1942, 125 F.2d 49, and cases therein cited.

The summons and complaint were served on the company on February 20, 1936, and thereafter this defendant filed its answer in the state court. On September 1, 1937, the plaintiff served and filed a memorandum to set the cause for trial and on the 30th day of September, 1937, the cause was set down by the state court to be tried on the 1st day of February, 1938, and regularly continued to February 8, following.

Upon the later date, the case was called for trial in the state court, without any service of process having been made on the fictitious resident defendants. Nor had these fictitious defendants made any appearance in the cause. After a preliminary statement by the court, and prior to the roll call or empanelment of the jury, counsel for the defendant Company asked plaintiff's counsel, "Are you ready to go ahead, Mr. Carter?", to which question plaintiff's counsel responded, "We are ready, yes".

Whereupon counsel for the Company served and filed a petition for removal of the cause to the United States District Court, together with a bond on removal. There is no bad faith claimed and the sole ground for removal is best stated by quoting from Company's petition:

"By announcing themselves as ready for trial, without service of summons and complaint upon said fictitiously named defendants, plaintiffs thereby voluntarily elected to proceed with the case against the Southern Pacific Company alone, and such election amounts to a complete severance of the action as to the non-resident defendant Southern Pacific Company, petitioner herein, as effectively as if it had been originally brought against such defendant alone.

\* \* \*

"Upon the announcement by said plaintiffs of their election to proceed with the trial, as aforesaid, said action, which, prior and up to the time of said announcement, had not been removable to a United States District Court, thereupon and for the first time and forthwith from the time of said announcement, became removable to the proper United States District Court upon the ground that then and there, there existed, and still exists, a separable controversy between the resident plaintiffs, and non-resident defendant Southern Pacific Company, your petitioner, and upon the further ground that said announcement by said plaintiffs was a complete severance of the action as to the non-resident defendant Southern Pacific Company, your petitioner, and so far as it is concerned, converted said

action into a separate action against said defendant Southern Pacific Company as effectively as if said Southern Pacific Company had originally been made the sole defendant. .."

Plaintiff's counsel vigorously opposed removal, and after argument the State Court denied the petition, and granted plaintiff leave to withdraw her election to proceed with the trial.

The next day the plaintiff served one Charles Poley, sued by a fictitious name, and ten days later Poley filed an appearance in the cause.

On February 28, 1938, the Company served on the plaintiff notice that the cause had been removed to the United States District Court and thereafter plaintiff moved in said United States District Court that the cause be remanded to the State Court, and the motion was denied.

The case proceeded to trial in the District Court, and judgment was made and entered against the Railway Company for $18,500 damages and costs of suit. There has never been a dismissal of the resident defendants sued under fictitious names.

The matter is now before us upon appeal by the Company from the judgment upon several assignments of error, but a jurisdictional question is immediately before us. The point is whether the defendant Southern Pacific Company was entitled to remove the cause to the District Court. See our opinion in Cheyne v. Atchison, Topeka & Santa Fe Railway Co., supra and cases therein cited. .

■ In determining the question of removability, we must look at the situation as it existed at the time the petition for removal was presented in the State Court. In the case of Madisonville Traction Co. v. Saint Bernard Mining Co., 196 U.S. 239, 244, 25 S.Ct. 251, 253, 49 L.Ed. 462, the Supreme Court laid down the following rules relative to the removal of causes:

"1. If a case be a removable one that is, if the suit, in its nature, be one of which the circuit court could rightfully take jurisdiction, then, upon the filing of a petition for removal, in due time, with a sufficient bond, the case is, in law, removed, and the state court in which it is pending will lose jurisdiction to proceed further, and all subsequent proceedings in that court will be void. [citing cases.]

"2. After the presentation of a sufficient petition and bond to the state court in a removal case, it is competent for the circuit court, by a proceeding ancillary in its nature—without violating § 720 of the Revised Statutes (28 U.S.C.A. § 379), forbidding a court of the United States from enjoining proceedings in a state court—to restrain the party against whom a cause has been legally removed from taking further steps in the state court. [citing cases.]

"3. It is well settled that if, upon the face of the record, including the petition for removal, a suit does not appear to be a removable one then the state court is not bound to surrender its jurisdiction, and may proceed as if no application for removal had been made."

Consequently, if, when the plaintiff announced that she was ready to proceed with the trial of the cause against the Southern Pacific Company, without serving the fictitious defendants, the right to remove the proceedings to the District Court had accrued, then the action of the State Court in granting the plaintiff leave to withdraw her election to proceed, after the defendant had filed his removal petition and bond could have no effect, and could not serve to render the cause non-removable.

■ Nor could the service of the summons and complaint on Charles Poley the next day serve to oust the District Court of jurisdiction to proceed, if the cause was properly removed by the action of defendant in filing his petition and bond. Where a case has been properly removed, jurisdiction over it will not be defeated by later changes or developments in the suit, such as changes in citizenship, in parties, in the amount involved or in the cause of action pleaded. Pullman Co. v. Jenkins, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334; Stewart v. Dunham, 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329; Phelps v. Oaks, 117 U.S. 236, 6 S.Ct. 714, 29 L.Ed. 888; Daland v. Hewitt Soap Co., D.C., 27 F.Supp. 482.

■ The question therefore narrows itself down to a determination of whether or not plaintiff's voluntary action in the State Court constituted in effect a severance of the cause of action as to the Southern Pacific Company. In Powers v. Chesapeake & Ohio R. Co., 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673, it was held that a cause not removable when originally filed in the State Court may thereafter become removable by

the discontinuance of the action against the resident defendants. The recital of facts in that case, however, disclose that the "discontinuance" was by a dismissal of the complaint as to these defendants. The cited case is therefore not fully determinative of the question before us.

A situation similar to the situation before us was presented in Berry v. St. Louis & S.F.R. Co., C.C., 118 F. 911, pages 913, 914, and in a well reasoned opinion the Court said:

"In the case at hand the plaintiff abandoned her right to a joint judgment by demanding a trial as to one defendant in the absence of service upon the other. The course of trial and the character of the verdict and judgment in a joint action render any other conclusion impossible. * * *

"Even if the plaintiff subsequently persisted in her pursuit of the Memphis Company, and the court finally succeeded in acquiring jurisdiction, the ultimate result would be separate trials before separate juries under diverse conditions; separate verdicts resulting in separate judgments * * *.

"I am aware that the supreme court has held in many cases that for all the purposes of a suit the cause of action is 'whatever the plaintiff declares it to be in his pleadings'; but the words so employed should be read in the light of the facts which were then presented for consideration. In those cases no subsequent condition arose outside of the pleadings which might fairly be said to operate as a voluntary abandonment by the plaintiff of the character of his action as first formally declared. There are also cases in which it is held that, where the defendant whose presence prevents a removal from a state court to a circuit court of the United States suffers a default, such condition does not give rise to a right of removal in the remaining defendant. And there are also cases in which the right to remove is denied when at the trial the court renders a judgment of dismissal against the defendant whose presence is incompatible with federal jurisdiction. But in neither of these classes of cases is the result due to the voluntary action of the plaintiff whose election controls the course and nature of the suit. The action of a court in dismissing a defendant at the trial is in invitum, and is not the voluntary act of the complaining party. Nor is he responsible for a default suffered by a defendant whom he has sued jointly with others upon a joint cause of action. But it is clear that, should such a defendant be dropped out of the suit by the voluntary action of the plaintiff, the question of the right of removal is then determinable by the status of the parties who remain. * * * It is but a step further, and it seems a logical one, that if a plaintiff voluntarily abandons the joint character of his proceedings, and elects to pursue the only defendant who has been drawn within the jurisdiction of the court upon a liability which is either joint or several, at his election, there arises at the moment of the election such a change in the structure of the controversy as confines the inquiry to the citizenship of the parties then before the court."

It is our opinion and we hold that the rule of the Berry case, supra, is sound, and that the plaintiff in the instant case having petitioned the court to set the case for trial and having announced that she was ready to proceed with the trial against the Southern Pacific Company, each at a time when only the latter defendant had been brought into court, had abandoned the joint character of her action, and rendered the cause immediately removable to the District Court.

The question next arises as to whether or not the petition for removal was timely. Plaintiff argued in the District Court in seeking a remand, that the petition, if proper at all, should have been made prior to the defendant's answer to the complaint, or at least immediately after service of the memorandum to set the case for trial.

The first argument of the plaintiff above was answered by the Supreme Court in Powers v. Chesapeake & Ohio R. Co., supra [169 U.S. 92, 18 S.Ct. 266, 42 L.Ed. 673], in the following words:

"The question whether a defendant may file, in the state court in which the suit was commenced, a petition for removal, after the time mentioned in the act of congress has elapsed, in a case which was not removable when that time expired, is now directly presented for adjudication; and the answer to this question depends upon the terms and effect of the act in force when these proceedings took place. * * *

"This provision clearly manifests the intention of congress that the petition for removal should be filed at the earliest possible opportunity. But, so long as there does not appear of record to be any re-

movable controversy, no party can be entitled to remove it, and the provision of the act of congress that 'any party entitled to remove any suit' 'may make and file a petition for removal' at or before the time when he is required to make answer to the suit cannot be literally applied. To construe that provision as restricting, to the time prescribed for answering the declaration, the removal of a case which is not a removable one at that time, would not only be inconsistent with the words of the statute, but it would utterly defeat all right of removal in many cases * * *.

"The reasonable construction of the act of congress, and the only one which will prevent the right of removal, to which the statute declares the party to be entitled, from being defeated by circumstances wholly beyond his control, is to hold that the incidental provision as to the time must, when necessary to carry out the purpose of the statute, yield to the principal enactment as to the right; and to consider the statute as, in intention and effect, permitting and requiring the defendant to file a petition for removal as soon as the action assumes the shape of a removable case in the court in which it was brought."

The answer to the question of the timeliness of defendant's petition then, depends largely upon the time of the event which turned the action into one appropriate for removal from the state court. It is pointed out in Pullman Co. v. Jenkins, supra, that the fact of non-service of the resident defendant was not a sufficient ground for removal, and it was therefore not until the plaintiff took some affirmative action to sever the cause of action that the right to remove the cause arose. The petition to remove was made immediately after the plaintiff announced herself ready to proceed with the trial against the Southern Pacific Company alone, and was therefore timely. The fact that the resident defendant was not served or would not appear at the time set for trial would not of necessity be known to the non-resident defendant and therefore his right to remove could not be denied because he did not move for the severance upon his being served with notice of setting the case for trial.

However, the fact that plaintiff had the case set for trial, knowing that the resident defendant had not been served and appeared in court with such knowledge and answered that she was ready for trial is conclusive evidence that she regarded the action as severed and negatives the idea that she had not definitely determined upon her course and acted upon such determination instead of having inadvertently placed her case in a position subject to removal and therefore subject to withdrawal with the court's permission of her petition and consent to proceed.

We therefore proceed to a consideration of the merits of the cause.

The defendant Southern Pacific Company's single track line passes through the small town of Dorris, California and is crossed by the highway close to the northern boundary of the town. The crossing approach is at a near level and unobstructed as to view from both railway and highway.

At approximately 8:45 p.m. of March 6, 1935, defendant's freight train, 3,318 feet long, consisting of an engine, 70 freight cars and caboose, while being operated in a southerly direction, arrived in the town with orders to clear the main line for a passenger train going northerly by passing over and through the passing track by 8:50 p.m. The engineer over-ran the switch point approximately 60 feet. The engineer then released his air brakes and, without whistling, backed his train, until the engine cleared the switch point. When the train stopped and before the back-up approximately half of its length had passed over the crossing.

After the back-up the train proceeded into the passing track and continued through the same southerly without again stopping.

When the freight train had cleared the main line the passenger train proceeded to the Dorris station, stopped for a few minutes and proceeded northward.

A short time before the accident, plaintiff as a guest passenger, with her companions had arrived in an automobile at a private home in Dorris during a light fall of snow and the fall had increased by the time they left this residence a few minutes later. The storm, which was not unusual for that location and time of year, reduced the visibility to between 10 and 20 feet. The automobile party was traveling from west to east on the right side of the highway, arriving at the railroad crossing at approximately 8:45 p.m. There were no lights, wig-wag or other form of automatic or manual signal at the crossing at the time. There was, however, an unlighted wooden cross-arm sign, on each side of the

crossing. The one on the west side of the track was not to the right of the eastbound traffic lane but was located on the opposite side of the highway 22 or 23 feet from the highway center and 14 feet off the north edge. The one on the east side of the crossing was 22 feet from the center of the highway and on the south side thereof.

None of the occupants of the car heard any whistles or other form of warning. Joseph Young, the car driver, testified that he did not see the freight train until he was approximately 10 feet from it, whereupon he turned sharply to the left. The train in its backing movement caught on some part of the vehicle, overturned it and dragged it across the highway before it was released. After the release a portion of each car hit the vehicle and this continued when the train moved forward. After the freight train passed on, Young tore the top out of the car and ran for assistance. While he was gone, the passenger train proceeded over the crossing, each car striking the automobile in passing it. Plaintiff was severely, seriously and permanently injured.

In seeking a reversal of the judgment against it, the defendant urges that the plaintiff failed to prove any negligence on it's part. It is stated in appellant's opening brief: "The Railroad Company Owes No Duty to Maintain at Ordinary Crossings Human or Mechanical Flagmen or Other Warning Devices to Warn Vehicular Travelers that the Train is Then Occupying the Crossing." The argument is that the train is in and of itself sufficient warning.

■ The subject has been treated in many jurisdictions and the authorities are not in accord. In some jurisdictions the Courts have apparently laid down the rule as contended for by the defendant, while in other jurisdictions it has been held to be a question for the jury to determine whether or not the railroad used ordinary care in all the circumstances of the case. In solving the problem, of course it is our duty to apply California law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487.

The case of Dunlap v. Pacific Electric Railway Co., 12 Cal.App.2d 473, 55 P.2d 894, is cited as determinative of the question. There a guest passenger in an automobile was denied recovery for injuries sustained when the automobile on a foggy night ran into a train moving on a crossing. The Court said (55 P.2d 895):

"The accident was not caused by the train running into the automobile in which the deceased was riding, but by the automobile running into defendant's freight train as the latter was slowly passing over the crossing. It was not occasioned by any mismanagement of the train. In the case of Mabray v. Union Pac. R. Co., D.C., 5 F.Supp. 397, 400, it was held that a railroad company has a right to occupy a crossing in the conduct and operation of its business, and that such obstruction is in itself notice of danger, so that the railroad company is not bound to give any further warning; and that, after a train has reached a crossing, the duty of a flagman ends as to that train, since then the train itself is a sufficient warning. This doctrine also finds support in 52 Cor.Jur. p. 189, and Brown v. Southern Ry. Co. (Pennington v. Southern Ry. Co.) [5 Cir.], 61 F.2d 399.

"No question of the giving of a warning of the approaching train is here involved, because at the time of the accident the engine had passed the crossing and was several hundred feet north thereof. 'All crossing signals are intended to protect the traveler against approaching trains and have been so regarded by our courts.' Mabray v. Union Pac. R. Co., supra."

If this were all the California law on the subject, it would seem that it would be our duty to hold for the defendant in the instant case.

However, in 1939, subsequent to the Dunlap decision, supra, the California District Court of Appeal decided the case of Harper v. Northwestern Pacific R. Co., 34 Cal.App.2d 451, 93 P.2d 821, which modified the doctrine pronounced in the Dunlap case. Here again the accident involved a collision between a freight train and an automobile. We quote (93 P.2d 824):

"Respondents cite many cases to the effect that the railroad corporation was lawfully occupying the crossing in the conduct of its business, and that the presence of a train across an intersection is of itself sufficient warning of danger.

"The right of the railroad company to occupy the street is conceded, but for the presence of a car across a highway to constitute notice of such an obstruction, we must presuppose that its presence could have been known to or anticipated by a person of reasonable prudence.

" 'It is true that a visible railroad track is itself a warning of danger. But it is equally true that a railroad track which is invisible on account of darkness or because it is otherwise concealed from view, is not a warning of danger, unless one knows just where to look for it. It is only when one observes, or by the exercise of reasonable care should have observed, a railroad track, or when one knows that it is in a particular place and identifies the locality, that it becomes a warning of danger. Under the circumstances of this case, it may well be said in the language of the court in the case of Gregoriev v. Northwestern Pac. R. Co., 95 Cal.App. 428, 433, 273 P. 76, 78: "Considering all of the circumstances attending the accident, especially those relating to the physical conditions present at the scene thereof, that respondent's failure to observe the railroad track was not due to a lack of exercise of ordinary care on his part." ' Hofstedt v. Southern Pac. Co., Cal.App., 1 P.2d 470, 473."

Defendant urges that the Harper case does not overrule the Dunlap case, since the facts in the Harper case disclose that the crossing sign was not in a conspicuous position. In this connection, the Court in the Harper case said (page 824 of 93 P. 2d): "It is here claimed that crossing signals are intended only to protect travelers against approaching trains and not against trains that have already reached the crossing, upon the theory that then the train itself is sufficient warning; but here where the presence of the spur itself was unknown to the driver of the car, a white cross-arm might have been seen where a dark box car would not * * *".

Thus the two California cases cited seem to lay down the rule that where the railroad company has used due care to warn the traveling public of the location of its railroad crossing, then an obstruction on the crossing is in itself notice of danger and the railroad company is not bound to give additional warning. But if the company has been negligent in failing to warn of the location of the crossing, then the presence of a train across an intersection might not be a sufficient warning of danger, for in order for the first rule to apply "we must presuppose that its presence could have been known to or anticipated by a person of reasonable prudence".

It would thus appear that unless the facts of the instant case are such that we must as a matter of law hold that the cross-arm signal maintained by the defendant was in a conspicuous place and constituted a sufficient warning of the location of the intersection, then we must hold against defendant on its first argument, that the train on the tracks conclusively constituted a sufficient warning of danger.

Defendant, however, in its next point claims that "no liability can be premised upon the position of the crossarm crossing sign."

In this connection it is urged that the complaint does not sufficiently charge negligence in this respect. The allegation of the complaint upon the point is that the defendant failed to place or maintain or provide "at the intersection any type of signal, bell or light to warn and notify motorists at said intersection of the presence of trains, cars or locomotives on said main track". From this language the defendant argues that the negligence complained of is the failure to warn of a train on the track whereas the purpose of a crossing sign is to warn of the presence of a railroad track upon which a train might be expected. We reject this argument, for as we have pointed out above, the California law is that the presence of a train across an intersection is sufficient warning of danger only where its presence could reasonably have been anticipated— that where the traveling public is not sufficiently warned of the presence of the railroad crossing, the train is not necessarily a warning of its own presence. Plaintiff's cause of action is based upon the alleged insufficiency of the warning of the train's presence, and in this connection it was proper to consider the sufficiency of the cross-arm signal.

The point is made that the crossing sign was not located in violation of the Railroad Commission's General Order No. 75-A, which reads, in part:

"Subdivision 5: (a) Each public crossing at grade of a road, highway or street with a track of a railroad * * * shall * * * be protected by at least one crossing sign, constructed and installed in substantial conformity with the specifications herein illustrated and designated as Standard No. 1,..

"(b) Each crossing sign (Standard No. 1) herein illustrated shall be located in a conspicuous position facing highway travel, preferably at either corner of the crossing intersection of the right-hand side of the

highway traffic flow and in advance of the railroad track."

It is suggested that the latter part of the order is not mandatory, and that the Order is complied with when the Railroad maintains one sign at the crossing. In making this argument, the defendant seems to overlook the instruction on the subject given by the Court:

"If you find that the defendant company violated the above rule at the time and place of this accident in failing to locate its crossing sign in a conspicuous position facing highway travel and if you find that such violation if any was the proximate cause of the accident, I instruct you that the defendant company was guilty of negligence.

"You are instructed that you cannot find the defendant negligent by reason of the fact that the crossing sign on the west side of said crossing was situate on the left-hand side of the highway traffic flow in lieu of the right-hand side of said traffic flow at said crossing, unless you further find that by reason of its location it was not situated in a conspicuous position facing highway travel."

Thus the Court instructed the jury exactly as the defendant company contends it should have done and we see no cause for complaint upon this score.

■ It is urged by the defendant that we should hold as a matter of law that the cross-arm sign was in a conspicuous position, and that it was error for the Court to instruct in the language above quoted.

We can best explain defendant's position here by a quotation from its opening brief: "Said instruction submits to the jury the right to determine that the appellant was negligent if they found that the crossing sign was not in a conspicuous place 'at the time and place of this accident', that is, when its presence was obliterated from the view of the occupants of the automobile by the snowstorm."

Defendant seems to take the position that its cross-arm sign was conspicuous on a clear sunny day, and therefore it was relieved of all responsibility to take further precautions to safeguard the traveling public, regardless of the atmospheric conditions. We cannot assent to such a narrow view. The evidence is clear that snowstorms were not unusual at the place of the accident during the winter months and the court admirably covered the situation in

the applicable part of the jury instruction which was as follows: "A railroad company, when necessary for the transaction of its business, has the right to run its cars and trains across the highway crossing in question, including the right to stop or back up its trains and obstruct the crossing, either on dark nights or during snow storms, as well as in the daytime, without the crew of said train being required to provide a flagman or some other means of warning to travelers of the presence of said train, unless the exercise of ordinary care in view of all the conditions existing at a particular crossing at a particular time requires that some sort of signal or warning of the presence of said train at said crossing be given."

Thus, if the defendant in the exercise of due care should have known that the cross-arm sign maintained by it would not be visible in a snowstorm not unusual to the vicinity, then it cannot rely on the maintenance of the cross-arm as a full discharge of its duty to warn the highway user of the presence of its railroad crossing and the danger incident thereto.

■ Defendant next argues that "the location of the crossing sign could not be a proximate cause of said collision, for the reason that the snowstorm was of such density that the occupants of the car could not see such sign, no matter where the same might be situate."

There are two faults with this argument. The first we have just herein pointed out, and the second fault is in the assumption as a fact that a cross-arm sign could not have been seen "no matter where the same might have been situate". According to the evidence and defendant's statement of the facts of the case there was a visibility of from 15 to 20 feet at the time of the accident. Whether or not a cross-arm properly placed would have been a sufficient warning was a question for the jury.

■ Defendant further urges that the absence of the crossing sign could not be the proximate cause of the collision for the reason that the driver of the automobile and the guests were familiar with the crossing and knew its location.

This point necessarily is to be divided into two parts, the first as it relates to the knowledge of the driver of the automobile, and the second as it relates to the knowledge of the plaintiff.

So far as the knowledge of the driver of the automobile is concerned, defendant's

point is not that the driver was contributorily negligent and that such negligence should be imputed to the plaintiff, for the California law would not support such an argument; but rather that such negligence of the driver was the sole proximate cause of the accident. But there is no warrant for the assumption that the driver's negligence was the sole proximate cause of the accident, and the defendant is invading the province of the jury in assuming this as the basis for his conclusions.

Concerning the plaintiff's knowledge of the location of the crossing, the defendant's argument is not clear, although it seems to be that the plaintiff was contributorily negligent and should not recover. Here again the jury found against defendant's contention, and we cannot say that there was error.

A subheading of defendant's opening brief is: "No Negligence Can be Premised Upon the Fact that the Engineer Did Not Give Three Blasts of the Whistle Prior to the Back Up Move". The principal point here seems to be that any duty under the defendant's rules and regulations regarding this whistle signal did not run to the traveling public. It is stated that this rule was adopted by the railroad company "to enable said company to carry on its business systematically, and was not intended to be a warning or notice to the traveling public that the train intended to back".

The Court's instruction in this respect reads:

"If you find that the defendant company violated one of its rules of operation governing the movement of its trains, you may consider such violation in determining whether or not the defendant was negligent.

"You must bear in mind, however, that negligence of the defendant, if any, is not alone sufficient to charge the defendant with liability for this accident. Before you would be justified in returning a verdict in favor of the plaintiff in this case and against the defendant, you must find not only that the defendant was negligent in some particular or particulars, but further that the negligence of the defendant, if any, was the proximate cause of the accident and that the plaintiff was not herself guilty of any negligence proximately contributing thereto".

We find that the instruction given is in accordance with the California law. In Gett v. Pacific Gas & Electric Co., 192 Cal. 621, 625, 221 P. 376, 378, it was said that the violation of an operating rule of the company was "not negligence per se" but was "a circumstance proper to be considered by the jury in determining whether or not [the defendant's employees] were negligent".

Defendant also urges that § 486 of the California Civil Code excused it from sounding the whistle in a city. We find, however, that the cited section does not prohibit the sounding of the whistle, and if the defendant should have sounded the same in the exercise of due care, it was not excused by the code section. See Jones v. Southern Pacific Co., 74 Cal.App. 10, 41, 239 P. 429.

The above discussion sufficiently disposes of all of defendant's assignment of errors except its last, relating to the amount of damages awarded plaintiff by the jury.

The jury first rendered a verdict against the defendant reading as follows: "We, the Jury, find in favor of the plaintiff and assess the damages against the defendant in the sum of $6,000.00 for special expenses covering the cost of hospital and medical services and $12,500.00 additional award or a total of $18,500.00." When this verdict was handed the trial judge, he advised the jury of his uncertainty as to what the jury meant by the phrase "$12,500.00 additional award". The foreman of the jury then stated: "It was our purpose to allow her a total amount of $18,500.00 instead of $81,484.88. That amount we agreed upon because $6,000, had actually been incurred and she was liable for the hospital expenses and so forth which we presumed had either been paid by her or that she still owed for them. Her lawyer's statement was that she would have earned $24,000.00 in the lifetime of thirty years, we didn't go by that but after several ballots we decided that $12,500.00 was to be given for damages or award, whichever is the legal term." The Court then suggested that the jury retire and make their verdict conform to their intentions. Before retiring, the foreman of the jury further stated: "Your Honor, may I ask one more question. Can we not simply say total amount $18,000.00 and nothing else?" To which question the court stated that the court could not suggest to the jury. After retiring, the jury again returned and presented their final verdict in the following words and figures: "We, the Jury, find in favor of the plaintiff and we assess the

damages against the defendant in the sum of $6,000.00 for special expenses covering the cost of hospital and medical services and $12,500.00 additional general damages or a total sum of $18,500.00."

Defendant's argument is that the record shows that it was the intention of the jury to allow special damages only for the amount which the plaintiff had incurred at the time of the trial for hospital and medical services; and that the total of these expenses at the time of the trial was only $4,588.15. Defendant therefore claims that the verdict is excessive by the sum of $1,411.85.

The evidence shows that while the appellee had actually incurred only this $4,-588.15 at the time of the trial, she would be compelled to expend in the future for leg braces $1,375. At the time of the trial she was still being treated by her physician for injuries. It is defendant's argument that no part of the $6,000 award can be attributed to these future expenses because of the statement made by the foreman prior to the final verdict, and which we have quoted above, to the effect that the $6,000 had actually been incurred.

■ We do not agree. In our opinion the foreman's statement in open court discloses that he understood that it was the intention of the jury to award the $6,000 for hospital and medical expenses; and that the $12,500 award was to compensate the plaintiff for her future loss of earnings. The verdict as finally rendered clearly conforms to this intent, and the verdict is amply supported by the evidence. However the foreman's statement can have no effect whatever for a jury verdict cannot be impeached, changed or explained by any juror's statement except where used in exceptional circumstances as a basis for showing improper or illegal conduct of the jury in arriving at a verdict.

Affirmed.

HANEY, Circuit Judge (dissenting).

I think the majority opinion is based on a misconception of, and a refusal to apply, the California law. In addition, the majority does not consider some of the facts and questions presented.

Appellant contends that it was error to admit into evidence General Order No. 75–A of the California Railroad Commission. Rule I thereof provides: "The purpose of these rules is to formulate, for the State of California, uniform standards for grade crossing protection, the application of which will insure greater safety to the public using grade crossings". Rule V provides in part:

"(a) Each public crossing at grade of a road, highway or street with a track of a railroad * * * shall * * * be protected by at least one crossing sign, constructed and installed in substantial conformity with the specifications herein illustrated and designated as Standard No. 1 * * *

"(b) Each crossing sign (Standard No. 1) herein illustrated shall be located in a conspicuous position facing highway travel, preferably at either corner of the crossing intersection on the right-hand side of the highway traffic flow and in advance of the railroad track * * *"

Rule VI(c) relates to automatic signals and requires them to "be located in a conspicuous position at *both* corners of the crossing intersection".

Appellee contends that the above rule requires two crossing signs. The basis of this argument is reached by disregarding the separation between provisions (a) and (b) of Rule V. In the absences of a California decision so interpreting such rule, I think such a construction is unreasonable and erroneous. The two provisions require only two things: (1) One sign; and (2) that it be placed in a "conspicuous" position facing highway travel. The provisions do not require, but permit two signs. This clearly appears from the use of the word "either". Under the rule, the signs are to be located "preferably at *either* corner of the crossing intersection". Rule VI(c) relates to automatic signals and requires them to "be located in a conspicuous position at *both* corners of the crossing intersection". It seems clear that if Rule V had meant "both" by the word "either", it would have used such word rather than "either".

Under the order each sign is required to "be located in a conspicuous position facing highway travel, preferably at either corner of the crossing intersection on the right-hand side of the highway traffic flow and in advance of the railroad track". The signs in question were on the right-hand side of the highway but not "in advance of the railroad track". They were beyond the railroad track, and because of that fact, appellee contends that appellant violated the order. I think such contention is unsound.

The only requirement as to location of the signs is that they must be conspicuous, and facing highway travel. The word "facing highway travel" simply means that the cross-arms should face rather than parallel highway traffic. The signs in question "faced" such traffic. The order does not require that the sign shall be in advance of the track. Such a location is, by the terms of the order, a "preferable" location only. In addition, if only one sign had been placed at the crossing, it would have been beyond the track for the highway traffic going in one direction.

The only remaining question regarding the order, is whether such order was violated by the placing of the signs in an inconspicuous position. Photographs of the crossing show it to be on substantially the same level as the highway. Insofar as the height of the crossing is concerned, the signs may be seen equally well from either side. The base of one sign was about seven and one-half feet from the edge of the pavement, and appears to be on the outer edge of the highway shoulder. The ends of the cross-arms were only about two and one-half feet from the beginning of the highway shoulder.

The word "conspicuous" is defined in the dictionary as follows:

"1. Obvious to the eye or mind; plainly visible, manifest.

"2. Attracting or tending to attract attention, as by reason of size, brillance, contrast, or station * * *" Webster's New International Dictionary, 2d Ed., Unabridged, 1935, p. 570.

In ordinary clear weather, both signs in question are plainly visible from the highway. Of course they may be plainly visible under certain conditions, and not visible at all under other conditions. I suppose, for example, that appellant is not required to build the signs so high and large that they will be plainly visible for fifty miles. In other words, regard must be had to the purpose of the requirement in reaching any conclusion as to its meaning.

General Order No. 75–A contains a declaration of such purpose as follows: "The purpose of these rules is to formulate, for the State of California, uniform standards for grade-crossing protection, the application of which will insure greater safety to the public using grade crossings". It is quite clear from such statement that the signs required are to protect the public by warning of the presence of a railroad crossing. It is obvious that the sign could not act as a warning under certain conditions because it could not be seen at all, and it would not, therefore, protect the public. If the sign were placed too near the highway it would constitute a hazard or danger rather than protection, and yet it must be near enough to serve the purpose for which it was erected. Since such a location may be one where the sign cannot, be seen under certain conditions, I think that under the circumstances here the fact that appellee may not have seen the sign does not show negligence on the part of appellant. On the contrary, I think that, as a matter of law, the sign was clearly in a conspicuous position, and that the court erred in admitting the order in evidence because no violation thereof was shown. In addition I think it was error to leave the question as to whether or not the sign was in a "conspicuous" position to the determination of the jury by instruction 22.

I am unable to agree with the reasoning of the majority regarding this matter. It says that if appellant "in the exercise of due care should have known that the cross-arm sign maintained by it would not be visible in a snowstorm not unusual to the vicinity, then it cannot rely on the maintenance of the cross-arm as a full discharge of its duty to warn the highway user of the presence of its railroad crossing and the danger incident thereto". The question is whether any evidence showed that the cross-arm sign was not in a conspicuous position. If not, it cannot be said that appellant was negligent in failing to place the cross-arm sign in a conspicuous position. The majority overlooks the real question entirely. Whether there may have been some other duty on appellant has nothing to do with the question mentioned.

The main question in the case is whether or not there was any proof of negligence on the part of appellant. Since a failure to whistle is not negligence (Gett v. Pacific Gas & Electric Co., 192 Cal. 621, 625, 221 P. 376), and no violation of General Order No. 75–A is shown, we must determine whether appellant was negligent under general principles of law. The California courts hold that if the automobile driver's negligence is the proximate cause of the injury to the guest, the latter may not recover from the railroad; but on the other hand, if the proximate cause of the guest's injury is the railroad's negligence, then the

guest may recover from the railroad even though the automobile driver is contributorily negligent (Baldwin v. Pacific Electric Ry. Co., 208 Cal. 364, 281 P. 380) apparently on the theory of concurrent negligence. Young v. Southern Pac. Co., 182 Cal. 369, 190 P. 36; 22 Cal.Jur. 314, § 67.

It is appellant's contention that since it was occupying the crossing, as it had a right to do, the train itself was a sufficient warning of danger, and it was under no duty to give any other or further warning. Appellee contends that the question of negligence is one for the jury where by peculiar and unusual facts and circumstances a crossing is hazardous.

The state of facts here involved is not one where a train runs into an automobile already occupying a crossing. It is not one where the train is occupying a crossing in violation of a statute or ordinance, or for an unreasonable length of time. It is not one where the view of warning signs or the crossing were obstructed by buildings, other cars, brush or trees. It is not one where the crossing is substantially higher or lower than the grade of the road, or one on a curve. It is not one wherein the driver of the automobile is seeking recovery, and it is not one where the guest in the automobile was contributorily negligent. Cases disclosing these facts are not, therefore, precisely in point.

Briefly stated, the facts here are that a train was slowly moving over a crossing, which was practically level with the highway and at a point where both the tracks and the highway are straight for several hundred feet or more, and the train was struck by an automobile in which appellant was riding as a guest at a time when visibility was impaired by a snow storm, there being no signal of any kind that the train was then occupying the crossing. Under such circumstances, it is held that the guest may not recover from the railroad for his injuries in the Fifth,[1] Seventh[2] and Eighth[3] Circuits, and in Alabama,[4] Illinois,[5] Indiana,[6] Iowa,[7] Kentucky,[8] Mississippi,[9] Nebraska,[10] New Hampshire,[11] New York,[12] North Carolina,[13] Ohio,[14] Texas[15] and Washington.[16] In these cases, the view was impaired by rain, fog, mist, smoke or dust. The reasoning of such cases appears to be: the train has a right to occupy the crossing, no warning that it is so occupying the crossing being necessary because it is in and of itself sufficient warning; the proximate cause of the injury is the weather condition; or the proximate cause of the injury is the negligence of the automobile driver.

On the other hand, it is held in Louisiana,[17] Minnesota,[18] Missouri,[19] South Carolina,[20] and possibly Maine,[21] that under such circumstances, it is a question for the jury to determine whether or not the railroad used ordinary care under the cir-

[1] Driskell v. Powell, 5 Cir., 67 F.2d 484.

[2] Probert v. Chicago, I. & L. R. Co., 7 Cir., 93 F.2d 259.

[3] Megan v. Stevens, 8 Cir., 91 F.2d 419, 113 A.L.R. 992.

[4] St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A.L.R. 1110.

[5] Coleman v. Chicago, B. & Q. R. Co. 287 Ill.App. 483, 5 N.E.2d 103; Fox v. Illinois Cent. R. Co., 308 Ill.App. 367, 31 N.E.2d 805.

[6] Pennsylvania R. Co. v. Huss, 96 Ind. App. 71, 180 N.E. 919; Cleveland, C., C. & St. L. R. Co. v. Gillespie, 96 Ind.App. 535, 173 N.E. 708.

[7] Dolan v. Bremner, 220 Iowa 1143, 263 N.W. 798; Thomson v. Stevens, 8 Cir., 106 F.2d 739.

[8] Chesapeake & O. R. Co. v. Switzer, 275 Ky. 834, 122 S.W.2d 967; Louisville & N. R. Co. v. Mischel's Adm'x, 272 Ky. 295, 114 S.W.2d 115.

[9] Gulf, M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750.

[10] Fischer v. Megan, 138 Neb. 420, 293 N.W. 287.

[11] Gage v. Boston & M. R. R., 77 N. H. 289, 90 A. 855, L.R.A.1915A, 363.

[12] Pascal v. Pascal, 254 App.Div. 807, 4 N.Y.S.2d 781.

[13] Rose v. Atlantic Coast Line R. Co., 210 N.C. 834, 187 S.E. 857.

[14] Capelle v. Baltimore & O. R. Co., 136 Ohio St. 203, 24 N.E.2d 822.

[15] Texas Mexican Ry. Co. v. Hoy, Tex. Com.App., 24 S.W.2d 18; Texas & N. O. R.Co. v. Stratton, Tex.Civ.App., 74 S.W. 2d 741.

[16] Reines v. Chicago, M., St. P. & P. R. Co., 195 Wash. 146, 80 P.2d 406.

[17] Squyres v. Baldwin, 191 La. 249, 185 So. 14.

[18] Munkel v. Chicago, M., St. P. & P. R. Co., 202 Minn. 264, 278 N.W. 41.

[19] Carson v. Baldwin, 346 Mo. 984, 144 S.W.2d 134.

[20] Funderburk v. Powell, 181 S.C. 412, 187 S.E. 742; Prescott v. Hines, 114 S. C. 262, 103 S.E. 543.

[21] Richard v. Maine Cent. R. Co., 132 Me. 197, 168 A. 811.

cumstances. These cases disclose impairment of view by snow, fog, mist, steam, or smoke, and proceed on the theory that it is the railroad's duty to use its property in such a way that it will not injure others.

Our particular problem is to determine which of the two above-mentioned rules is followed in California, since California law is binding here. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. I think California follows the majority rule above mentioned.

In Dunlap v. Pacific Electric R. Co., 12 Cal.App.2d 473, 55 P.2d 894, an automobile ran into a train moving on a crossing and recovery on behalf of the guest was denied. The night was very foggy, and there was no warning of any kind that the train was occupying the track. There was a conflict in the evidence as to whether a light or an automatic signal at the crossing was operating.[22] The court stated (12 Cal.App.2d 476, 55 P.2d 895):

"Appellant earnestly insists that it was a debatable question of fact, upon which reasonable minds might disagree, as to whether or not the defendant railway company was negligent in running its cars across the highway on a dark and foggy night without providing a flagman, red flares, or some other means of warning to travelers at the intersection; but the authorities seem to hold that railway companies, through their agents, in the reasonable management of their trains which are rightfully upon a crossing, are not chargeable with knowledge that an automobile, bearing headlights of sufficient power to enable the driver to avoid an obstruction in the road, was nevertheless likely to crash into a moving train unless a danger signal or flagman with a lighted lantern was stationed in the highway. Gage v. Boston & M. R. R., 77 N.H. 289, 90 A. 855, L.R.A. 1915A, 363. * * *

"No question of the giving of a warning of the approaching train is here involved, because at the time of the accident the engine had passed the crossing and was several hundred feet north thereof. 'All crossing signals are intended to protect the traveler against approaching trains and have been so regarded by our courts.' * * *."

Appellee strongly relies on Harper v. Northwestern Pac. R. Co., 34 Cal.App.2d 451, 93 P.2d 821. In that case, it was held that a nonsuit was improperly granted where the evidence disclosed a violation of § 486, Calif.Civil Code, and the crossing sign was not in a "conspicuous" position as required by General Order No. 75–A of the California Railroad Commission. Were those facts present here, I would find no difficulty in finding evidence of negligence. In fact the latter case distinguishes the Dunlap case on those grounds. 34 Cal.App. 2d 456, 93 P.2d 821. The contention that the weather conditions made the crossing unusually hazardous is contrary to the Dunlap case and the majority rule stated above. In none of such cases was the weather condition held to create an unusually hazardous crossing.

The majority holds that the Harper case "modified the doctrine pronounced in the Dunlap case", and thus refuses to apply the California law as stated in the Dunlap case. The Harper case not only did not state that it "modified" the Dunlap case, but specifically distinguished it. How the Harper case could reasonably be said to "modify" the Dunlap case is wholly unapparent to me. In the Harper case, negligence, consisting of a violation of § 486, Calif.Civ.Code because of a failure to whistle, and of a violation of General Order No. 75–A because the cross-arm sign was obscured by brush and trees, was shown. In the Dunlap case there was no showing of such negligence or any other negligence. The cases being patently different on their facts, it is obvious that the prior case was not "modified".

I believe appellee failed to introduce any evidence from which negligence of appellant could have been inferred under California law, and that the motion for a directed verdict should have been granted.

The judgment should be reversed.

---

[22] The automobile driver testified that he saw no lights and heard no signal. In California such evidence is sufficient to show an absence of lights and signal.

Thuet v. Southern Pacific Co., 135 Cal. App. 527, 27 P.2d 910; Lahey v. Southern Pacific Co., 16 Cal.App.2d 652, 61 P. 2d 461.